## BALTIC MINING COMPANY v. COMMONWEALTH OF MASSACHUSETTS.

## S. S. WHITE DENTAL MANUFACTURING COMPANY v. COMMONWEALTH OF MASSACHUSETTS.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

Nos. 30, 353. Argued April 29, 30, 1913.—Decided November 3, 1913.

While a State may not burden interstate commerce or tax the carrying on of such commerce, the mere fact that a corporation is engaged in interstate commerce does not exempt its property from state taxation.

While interstate commerce itself cannot be taxed, the receipts of property or capital employed therein may be taken as a measure of a lawful state tax.

A State may, so long as it does not violate any principle of the Federal Constitution, exclude from its border a foreign corporation or prescribe the conditions upon which it may do business therein.

Where a foreign corporation carries on a purely local business separate from its interstate business, the State may impose an excise tax upon it for the privilege of carrying on such business and measure the same by the authorized capital of the corporation.

The excise tax, imposed by Part III of c. 490 of the Statutes of Massachusetts of 1909, on certain classes of foreign corporations,which excise is measured by the authorized capital of such corporations but limited to a specified sum, is not an unconstitutional burden on interstate commerce, nor does it deprive such corporations of their property without due process of law or deny them the equal protection of the law. *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1; *Southern Railway Co.* v. *Green*, 216 U. S. 400, distinguished.

207 Massachusetts, 381; 212 Massachusetts, 35, affirmed.

THE facts, which involve the validity under the commerce, due process and equal protection clauses of the Federal Constitution of an act of the Commonwealth of

Massachusetts imposing a tax on foreign corporations within the Commonwealth, are stated in the opinion.

*Mr. William P. Everts* and *Mr. Charles A. Snow* for plaintiffs in error:

The Massachusetts statute is void because repugnant to the "commerce" and "due process" clauses of the Federal Constitution.

A State cannot lawfully impose an excise measured by the entire capital stock of a foreign corporation engaged in interstate commerce as a condition of its right to transact domestic business.

Such a measure, in its necessary effect and operation, directly and substantially burdens interstate commerce and is, therefore, a regulation of interstate commerce. And this is so even though professedly exacted for the privilege of transacting domestic commerce.

It is also unconstitutional, because it conflicts with the "due process" clause. *Western Union* and *Pullman Cases*, 216 U. S. 1, 56; *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146; *West. Un. Tel. Co.* v. *Andrews*, 216 U. S. 165; *Southern Railway Co.* v. *Greene*, 216 U. S. 400; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 163; *Atchison &c. R. R. Co.* v. *O'Connor*, 223 U. S. 280.

This Massachusetts excise differs in no material respect from the Kansas excise.

There is no suggestion in the *Western Union* or *Pullman Cases* or later cases limiting their scope to palace car, telegraph, or other *quasi*-public corporations.

The necessary effect of an excise based on the entire capital of an interstate commerce corporation is to burden directly and substantially the interstate portion of its business, even though professedly imposed for the privilege of transacting domestic business and also to tax its property located beyond the borders of the taxing State.

The mere fact that a company is not a *quasi*-public

corporation cannot alter the necessary effect and operation of such an excise.

In the Massachusetts, as well as in the Kansas, case the excise was exacted as a condition of granting local privileges. No reason can be suggested why such an effect and result should be limited to *quasi*-public corporations, when the same excise is involved.

The insertion of a maximum limit does not help the tax, especially where, as here, the maximum limit has no application to the companies before the court. *Ludwig* v. *West. Un. Tel. Co.*, 216 U. S. 146; *West. Un. Tel. Co.* v. *Andrews*, 216 U. S. 165; *Atchison &c. Ry. Co.* v. *O'Connor*, 223 U. S. 280; *Mulford Co.* v. *Curry*, 44 California, 80.

Any occupation or privilege tax, license fee, or other excise, which directly and substantially burdens interstate commerce, is unconstitutional.

Where a tax necessarily affects and burdens interstate commerce, its effect cannot be altered by the mere fact that the corporation is not a *quasi*-public corporation.

The cases holding that a State may, at its pleasure, totally exclude foreign corporations from its limits or admit them to the privilege of transacting domestic business upon such terms and conditions as it deems best, such as *Osborne* v. *Florida*, 164 U. S. 160; *Pullman Co.* v. *Adams*, 189 U. S. 420; *Allen* v. *Pullman Co.*, 191 U. S. 171; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Pembina Co.* v. *Pennsylvania*, 125 U. S. 181, did not involve interstate commerce in any way.

They have no application to a case where the necessary effect of a particular excise is to burden interstate commerce directly and substantially.

A statute is unconstitutional which requires a foreign corporation to waive right to litigate in Federal courts as a condition of right to transact domestic business.

If an excise, by its necessary effect, directly and sub-

stantially burdens interstate commerce, it is unconstitutional, though professedly exacted for a local privilege.

In considering effect and purpose of a tax, this court looks through forms and attempts to reach the substance.

The theory of the Massachusetts court that the principles of the *Pullman* and *Western Union Cases* have no application where the company is free to renounce or abandon its domestic business, and only apply where the interstate and domestic business are inextricably interwoven, has no support in reason or upon the authorities.

*Pullman Co.* v. *Adams,* 189 U. S. 420, did not involve interstate commerce.

The measure of the excise and its necessary effect and operation in burdening interstate commerce are the material factors. An excise measured · by the entire capital is based upon an erroneous measure, because it necessarily burdens in a direct and substantial manner the interstate portion of company's business. *Allen* v. *Pullman Co.,* 191 U. S. 171; *Kehrer* v. *Stewart,* 197 U. S. 60; *Osborne* v. *Florida,* 164 U. S. 650. *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305, distinguished.

See *Norfolk & Western R. R. Co.* v. *Pennsylvania,* 136 U. S. 114.

Sales of goods or contracts for their sale made in one State, for delivery in another State, or requiring transportation through more than one State, constitute transactions of interstate commerce, notwithstanding the fact that the transportation is conducted, not by the seller, but by common carriers.

A tax upon the seller of goods is a tax upon the goods themselves. *Kehrer* v. *Stewart,* 197 U. S. 60.

Sales or contracts of sale made or negotiated in one State for delivery in another, or requiring transportation to the purchaser in another State, are transactions of interstate commerce.

The sale and barter of · goods for delivery in other

States was the original conception of interstate commerce and the transportation of goods and passengers was a later development.

The negotiation of sales of goods for the purpose of introducing into another State is interstate commerce.

Transportation by common carrier is not the test of interstate commerce which may exist without intervention of any form of transportation.

The protection of the "commerce" clause is not limited to *quasi*-public corporations.

The negotiation of sales by ordinary trading corporations engaged in interstate commerce comes within the protection of the "commerce" clause, as against state statutes imposing excises, whether in the form of occupation or privilege taxes, or of license fees. *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Corson* v. *Maryland*, 120 U. S. 502; *Welton* v. *State of Missouri*, 91 U. S. 275; *Brown* v. *Maryland*, 12 Wheat. 419; *Asher* v. *Texas*, 128 U. S. 129; *Walling* v. *Michigan*, 116 U. S. 446; *Brennan* v. *Titusville*, 153 U. S. 289; *Stockard* v. *Morgan*, 185 U. S. 27.

A State cannot tax people representing the owners of property outside of the State for the privilege of soliciting orders within it as agents of such owners for property to be shipped to persons within the State; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Dozier* v. *Alabama*, 218 U. S. 124; or for maintaining an office; *McCall* v. *California*, 136 U. S. 104; *Norfolk & Western R. Co.* v. *Pennsylvania*, 136 U. S. 114; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Parsons-Willis Lumber Co.* v. *Stuart*, 182 Fed. Rep. 779.

The Massachusetts excise is unconstitutional and void, because it is also repugnant to the equal protection of the laws clause.

A State cannot subject a foreign corporation, which is already in the State in compliance with its laws and has

there acquired property of a fixed and permanent nature, to a new or additional excise, for the privilege of doing local business, which is not at the same time imposed upon domestic corporations. *Southern Railway Co.* v. *Greene,* 216 U. S. 400.

The fact that this excise has a maximum limit cannot help its constitutionality, especially where the maximum is not applicable to the corporation before the court.

*Mr. James M. Swift* and *Mr. Andrew Marshall* for defendant in error:

The exactions in question are excises and not property taxes; the history of the taxes shows them to be excise taxes.

In Massachusetts property taxes and excise taxes are perfectly distinct and always have been. *Portland Bank* v. *Apthorp,* 1815, 12 Massachusetts, 252.

Any property tax, to be valid under the Constitution, must be proportional, and any such tax assessed upon certain property at a rate different from that on other property is disproportional. *Oliver* v. *Washington Mills,* 11 Allen, 268, 275; *Cheshire* v. *County Commissioners,* 118 Massachusetts, 386, 389; *Northampton* v. *County Commissioners,* 145 Massachusetts, 108, 109; *Opinion of the Justices,* 195 Massachusetts, 607; *Opinion of the Justices,* 208 Massachusetts, 616; *S: S. White Co.* v. *Commonwealth,* 212 Massachusetts, 35, 38.

It has never been held that excises need be more than reasonable.

The policy of imposing excises upon corporations has been applied gradually but consistently by the legislature to an increasing number of kinds of corporations. *West. Un. Tel. Co.* v. *Massachusetts,* 125 U. S. 536; *Massachusetts* v. *West. Un. Tel. Co.,* 141 U. S. 40; *Oliver* v. *Liverpool & London Ins. Co.,* 100 Massachusetts, 531; *Connecticut Life Ins. Co.* v. *Commonwealth,* 133 Massachusetts, 161; *At-*

*torney General* v. *Bay State Mining Co.*, 99 Massachusetts, 148.

The statute itself describes the tax as an excise tax. The declared purpose of the act is to be accepted as true, unless incompatible with its meaning and effect. *Hazen* v. *Essex Co.*, 12 Cush. 475, 477; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 145.

The taxes have been defined by the Supreme Court of Massachusetts, in this case as well as in other cases, as excise taxes and not taxes on property. *Pratt* v. *Street Commissioners*, 139 Massachusetts, 559; *Commonwealth* v. *Barnstable Savings Bank*, 126 Massachusetts, 526; *In re Suffolk Bank*, 151 Massachusetts, 103, 106; *Attorney-General* v. *Massachusetts Pipe Line Co.*, 179 Massachusetts, 15, 19; *Greenfield Bank* v. *Commonwealth*, 211 Massachusetts, 207; *Farr Alpaca Co.* v. *Commonwealth*, 212 Massachusetts, 156, 162.

The construction and interpretation given by the Massachusetts court to the provision of law under which the taxes in question were imposed are conclusive upon this court, if in actual operation and effect the statute is consistent with that construction and interpretation. *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 572; *Stockard* v. *Morgan*, 185 U. S. 27, 30; *Osborne* v. *Florida*, 164 U. S. 650; *Hamilton Co.* v. *Massachusetts*, 6 Wall. 632.

The required payment is strictly of an excise tax, and not of a tax upon property. The fact that it is estimated upon the par value of the capital stock, with a maximum limit of $2,000 as the highest tax that can be imposed upon the largest corporation, does not make it a tax upon property. *Attorney-General* v. *Bay State Mining Co.*, 99 Massachusetts, 148; *Commonwealth* v. *Lancaster Savings Bank*, 123 Massachusetts, 493; *Pratt* v. *Street Commissioners*, 139 Massachusetts, 559, 562; *Provident Institution* v. *Massachusetts*, 6 Wall. 632; *Hamilton Co.* v. *Massachu-*

*setts*, 6 Wall. 632; *Society for Savings* v. *Coite*, 6 Wall. 594, 608; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107.

Since the tax is in its nature an excise tax, authorized by the state constitution, the legislature has wide discretion as to the method to be prescribed for computing the amount of the tax. *Delaware Railroad Tax*, 18 Wall. 206, 231; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Provident Institution* v. *Massachusetts*, 6 Wall. 627.

A license tax may be exacted as a condition of the corporation keeping an office within the State for the use of its officers. *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181. See also *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107.

The Massachusetts statute as applied to the plaintiffs in error does not conflict with the commerce clause of the Constitution of the United States.

A State may tax a foreign corporation for the privilege of a domicile for local business if the effect is not to regulate interstate commerce.

A State has power to exclude or condition the entrance of foreign corporations within its limits. *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Security Mut. Life Ins. Co.* v. *Prewitt*, 202 U. S. 246; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, and cases cited; *Osborne* v. *Florida*, 164 U. S. 650, 655; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Cooper Manfg. Co.* v. *Ferguson*, 113 U. S. 727; *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322, 343.

The argument of the defendant in error gives full effect to the limitation which forbids imposing upon corporations engaged in interstate commerce conditions so directly affecting the interstate commerce as to amount to a restriction of that commerce or to a regulation of it, within the meaning of the Constitution of the United States. *Commonwealth* v. *Petranich*, 183 Massachusetts,

217, 219; *Attorney-General* v. *Electric Battery Co.*, 188 Massachusetts, 239; *Pickard* v. *Pullman Car Co.*, 117 U. S. 34; *Cooper Manfg. Co.* v. *Ferguson*, 113 U. S. 727; *Leloup* v. *Mobile*, 127 U. S. 640; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Post. Tel. Cable Co.* v. *Charleston*, 153 U. S. 692; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, 216 U. S. 56; *International Text Book Co.* v. *Pigg*, 217 U. S. 91; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Baltic Mining Co.* v. *Commonwealth*, 207 Massachusetts, 381; *S. S. White Dental Co.* v. *Commonwealth*, 212 Massachusetts, 35.

If the tax denominated as an excise is not in reality a tax upon interstate commerce or a tax upon property, the mode of its measure, however arbitrary and capricious, is wholly immaterial in this court. *Delaware Railroad Tax*, 18 Wall. 206, 231.

Whether the excise regulates interstate commerce is a practical question to be determined by analyzing its effect in operation. *Galveston &c. Ry. Co.* v. *Texas*, 210 U. S. 217, 227; *West. Un. Tel. Co.* v. *Kansas*, 216 U. S. 1; *Pullman Co.* v. *Kansas*, *Id.* 56; *Ludwig* v. *West. Un. Tel. Co.*, *Id.* 146; *West. Un. Tel. Co.* v. *Andrews*, *Id.* 165; *Atchison, Topeka &c. Ry.* v. *O'Connor*, 223 U. S. 280.

The exaction in question, considered with reference to the whole taxation system of Massachusetts and as construed by the courts and as applied to the facts in these cases, does not as a practical matter regulate interstate commerce in which either plaintiff in error is engaged.

The Baltic Company is not directly engaged in interstate commerce in Massachusetts, and its place of business therein is not maintained or used for the purposes of interstate commerce.

The White Company was engaged both in interstate and intrastate business in Massachusetts and maintained its place of business therein for the purposes of both inter-

state and intrastate business.  *Osborne* v. *Florida,* 164 U. S. 650.

The only thing conditioned in either of the cases at bar was the privilege of maintaining an office in Massachusetts for the purposes of purely local or intrastate business.

It is for the Commonwealth to say whether it will grant or withhold from the plaintiffs in error the privilege of maintaining those places of business in the Commonwealth, and to fix the conditions upon which it would grant that privilege.  *Gibbons* v. *Ogden,* 9 Wheat. 1, 7.

A tax by a State for such a privilege under similar circumstances does not amount to a regulation of interstate commerce.  *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *McCall* v. *California,* 136 U. S. 104; *Kehrer* v. *Stewart,* 197 U. S. 60; *Pennsylvania R. R.* v. *Knight,* 192 U. S. 21; *Cooper* v. *Ferguson,* 113 U. S. 727, 736.  See, also, *Reymann Brewing Co.* v. *Brister,* 179 U. S. 445; *Horn Silver Mining Co.* v. *New York,* 143 U. S. 305; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Co.,* 191 U. S. 171; *Osborne* v. *Florida,* 164 U. S. 650; *The Daniel Ball,* 10 Wall. 565; *Coe* v. *Errol,* 116 U. S. 517; *Detroit &c. Ry. Co.* v. *Int. Comm. Comm.,* 167 U. S. 633; *Rhodes* v. *Iowa,* 170 U. S. 412; *Kelley* v. *Rhoades,* 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82.

A tax is not a regulation of interstate commerce merely because it is assessed upon and paid by a corporation which is engaged in interstate commerce.  *Postal Tel. Co.* v. *Adams,* 155 U. S. 688.

It is not everything that affects commerce that amounts to a regulation of it within the meaning of the Constitution.  *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Delaware Railroad Tax,* 18 Wall. 206.

The excise stands the test of the principles declared in *Western Un. Tel. Co.* v. *Kansas* and *Pullman Co.* v. *Kansas,* and is constitutional under the commerce clause.  *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107.

The decisions of the Massachusetts court do not deny to ordinary business corporations engaged to some extent in interstate commerce the protection of the commerce clause of the Constitution. *Attorney General* v. *Electric Storage Battery Co.*, 188 Massachusetts, 239. *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, and the other drummer and canvasser cases distinguished.

The exaction, if true to its history, its nature, its name and its purpose as an excise, did not tax property outside the Commonwealth of Massachusetts or in any manner without due process of law.

An excise under the constitution of Massachusetts is no different in this respect from an excise under the Constitution of the United States containing a similar provision. *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 152.

The right to select the measure and objects of taxation devolves upon the legislature and not upon the courts. *McCray* v. *United States*, 195 U. S. 27, 58.

The statute does not deny the plaintiffs in error the equal protection of the laws. It applies alike to all corporations in the same situation. *Southern Railway Co.* v. *Greene*, 216 U. S. 400, distinguished.

The classification is reasonable. *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563, 572; *Adams Express Co.* v. *Ohio*, 165 U. S. 194, 228.

The statute does not discriminate against the plaintiffs in error.

MR. JUSTICE DAY delivered the opinion of the court.

These cases present the question of the constitutional validity of an act of the Commonwealth of Massachusetts (St. 1909, c. 490, Part III, § 54 *et seq.*), undertaking to impose a tax on foreign corporations within the Commonwealth. While the cases are not in all respects parallel

they were argued together and present the same questions, and we shall accordingly dispose of them as one.

The cases were heard upon agreed statements of fact, which show:

The Baltic Mining Company, a Michigan corporation, organized for the purpose of mining, producing and selling copper, with a total authorized capital stock of $2,500,000, consisting of 100,000 shares of the par value of $25 each, all of which have been issued and are outstanding, $18 having been paid on each share, owns a copper mine with equipment in Michigan and has its principal place of business in that State. It has an office in the City of Boston, for the use of its president and treasurer, residing in Boston, for the general financial management and direction of its affairs and for the meetings of its board of directors and the transfer of its stock. The Copper Range Consolidated Company, a New Jersey corporation, owns and holds 99,659 shares of its stock, and also has an office and place of business in Boston. The Baltic Mining Company was admitted to do business in Massachusetts and complied with the foreign corporation laws of that State. Its total property and assets amount to $10,776,000, but none of the property is in Massachusetts except current bank deposits and a certificate for $80,000 of stock in another Michigan corporation. It is engaged in the mining and refining of copper in Michigan, which is sold for delivery in the several States of the United States and in foreign countries. The United Metals Selling Company, a New Jersey corporation, with its principal office in New York City and with no office in Massachusetts, has the exclusive agency for marketing the Baltic Mining Company's copper, it making no sales directly itself. Considerable quantities of the copper are sold for delivery in Massachusetts, as well as in other States, and transported from the Michigan smelter to the purchaser. In exceptional instances sales are made in Massachusetts

for delivery there, but this is out of the usual course of business, not more than five per cent. of the total sales being made, the larger part being regularly consummated in New York City. The petition was brought to recover an excise tax of $500 imposed by the Commonwealth, pursuant to § 56 of the act, and paid by the Company, and was dismissed by the Supreme Judicial Court of Massachusetts. 207 Massachusetts, 381.

The S. S. White Dental Manufacturing Company is a Pennsylvania corporation, engaged in manufacturing and buying and selling artificial teeth and dental supplies, with an authorized capital stock of $1,000,000 and with its principal office in Philadelphia. Its assets aggregate $5,711,718.29. It has a usual place of business in Boston, consisting of large salesrooms, stockrooms, offices and storerooms, occupied under lease, where it keeps a supply of goods displayed for sale and in stock. Books are kept here, a New England sales agent is in charge, and fifty-four persons are employed, twelve being salesmen who travel through the New England States, except Connecticut, and the maritime provinces; but no manufacturing is done in Massachusetts. It sells goods over the counter from its Boston store and also for delivery in Massachusetts by messenger, mail and express, fifty per cent. of the sales made at that store being to persons residing in Massachusetts and fifty per cent. for delivery to persons residing outside of the State. Goods sold from the Boston stock for delivery other than over the counter or by mail or messenger are billed from the Boston salesrooms directly to the purchaser as consignee from the Company as consignor. Orders are also accepted at the Boston salesrooms for delivery from the New York and Pennsylvania factories, such orders being sent to the principal office in Pennsylvania and filled either in New York or in Pennsylvania and the goods being billed directly to the purchaser. Except in intrastate deliveries by messenger,

the Company uses public carriers in the transportation of the goods, and a large percentage of the total sales require transportation from the New York or Pennsylvania factories into other States. The stock on hand in the Boston store, the fixtures and the current bank deposits represent the tangible property in Massachusetts and amount to about $100,000. The company maintains fourteen places of business other than the ones in Pennsylvania and Massachusetts, located in New York and other States. Ten per cent. of the sales are made in Massachusetts, of which approximately one-half are for delivery in that State. The Company complied with the requirement of the laws relating to foreign corporations for ten years, and seeks to recover an excise tax of $200 levied pursuant to the statute and paid by it. The Supreme Judicial Court of Massachusetts held that the act was valid and dismissed the petition. 212 Massachusetts, 35.

The act provides (§ 54) for the filing of a certificate annually by foreign corporations, showing their authorized capital stock and assets and liabilities, and (§ 55) that such certificate shall be accompanied by an auditor's sworn statement and shall be submitted to the commissioner of corporations, who shall assess an excise tax upon the corporation, in accordance with the provisions of § 56 of the act, and that the certificate shall not be filed until approved by him and the tax paid.

Section 56 reads:

"Every foreign corporation shall, in each year, at the time of filing its annual certificate of condition, pay to the treasurer and receiver general, for the use of the commonwealth, an excise tax to be assessed by the tax commissioner of one-fiftieth of one per cent of the par value of its authorized capital stock as stated in its annual certificate of condition; but the amount of such excise tax shall not in any one year exceed the sum of two thousand dollars."

It is further provided (§ 58) for notice to foreign corporations failing to file their proper certificates, and thereafter for the forfeiture and collection of penalties and for the issuance of injunctions until the payment of such penalties and the filing of such certificates.

The specific objections of the plaintiffs in error to the imposition of this tax under the facts shown in the records are threefold: First, the tax is a regulation of interstate commerce, in that it imposes a direct burden upon that portion of the business and capital of the plaintiffs in error which is devoted to interstate commerce; second, the tax is in violation of the due process of law clause, because it attempts to impose taxes upon property beyond the jurisdiction of the Commonwealth of Massachusetts; and third, the tax denies to the plaintiffs in error the equal protection of the law.

It is well settled and requires no review of the decisions of this court to that effect that the power of Congress over interstate commerce is supreme under the Federal Constitution and that the States may not burden such commerce, it being the purpose of the Constitution of the United States to bring commerce of this character under one supreme control and to vest the exercise of authority over it in the general government. It is equally well settled that forms of regulation prohibited to the State by the Constitution may consist of efforts to tax the carrying on of such commerce and of attempted levies of taxes upon the receipts of interstate commerce as such. *Galveston, Harrisburg &c. Ry. Co.* v. *Texas,* 210 U. S. 217; *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Minnesota Rate Cases,* 230 U. S. 352, 400, and previous cases in this court therein cited.

While this is true, other equally well established principles must be borne in mind in considering the validity of a state tax attacked upon grounds of unconstitutionality. The mere fact that a corporation is engaged in

interstate commerce does not exempt its property from state taxation. *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 344. It is the commerce itself which must not be burdened by state exactions which interfere with the exclusive Federal authority over it. A resort to the receipts of property or capital employed in part at least in interstate commerce, when such receipts or capital are not taxed as such but are taken as a mere measure of a tax of lawful authority within the State, has been sustained. *Maine* v. *Grand Trunk Railway Co.,* 142 U. S. 217; *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 162–5; *United States Express Co.* v. *Minnesota, supra.*

The right of a State to exclude a foreign corporation from its borders, so long as no principle of the Federal Constitution is violated in such exclusion, has been repeatedly recognized in the decisions of this court, and the right to prescribe conditions upon which a corporation of that character may continue to do business in the State, unless some contract right in favor of the corporation prevents or some constitutional right is denied in the exclusion of such corporation, is but the correlative of the power to exclude. *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 343; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *Barron* v. *Burnside,* 121 U. S. 186; *Insurance Co.* v. *Morse,* 20 Wall. 445; *Herndon* v. *Chicago, Rock Island & Pacific Ry. Co.,* 218 U. S. 135. For example, a State may not say to a foreign corporation, you may do business within our borders if you permit your property to be taken without due process of law, or you may transact business in interstate commerce subject to the regulatory power of the State. To allow a State to exercise such authority would permit it to deprive of fundamental rights those entitled to the protection of the Constitution in every part of the Union. Having these general prin-

ciples in mind, we will proceed to a consideration of
the statute of Massachusetts directly involved in these
cases.

The Supreme Judicial Court of Massachusetts in con-
sidering the character of the tax assessed under the statute
of 1909 said (207 Massachusetts, 388):

"The required payment is strictly of an excise tax, and
not of a tax upon property. . . . This excise tax is for
the commodity or privilege of having an establishment
for business in Massachusetts, with the protection of our
laws and the financial and other advantages of a situation
here."

We have no fault to find with the conclusion that this is
an excise tax. See also *Provident Institution* v. *Massachu-
setts, supra; Hamilton Co.* v. *Massachusetts, supra,* in which
this court had occasion to consider the taxing system of
Massachusetts. That the State may impose a tax upon a
corporation, foreign or domestic, for the privilege of doing
business within its borders is undoubted, and such has
long been the legislative policy of the Commonwealth of
Massachusetts, as appears from the history of legislation
set forth in the opinions in the cases last cited. Construing
the act in question, the Supreme Judicial Court of Mas-
sachusetts has held that it does not apply to corporations
engaged in railroad, telegraph, telephone, etc., business
which are taxed on another plan under the provisions of
the statute. It is held not to apply to corporations whose
business is interstate commerce or who carry on interstate
and intrastate business in such close connection that the
intrastate business cannot be abandoned without serious
impairment of the interstate business of the corporation.
And the statute, it is held, does not apply to corporations
which have places of business for the transaction solely
of interstate commerce. *Attorney General* v. *Electric
Storage Battery Co.,* 188 Massachusetts, 239. The tax is
levied upon the privilege of carrying on business within

the State and not upon property therein which is otherwise taxed.

It is said, notwithstanding, that this tax is a direct burden upon interstate commerce and an attempt to tax property beyond the jurisdiction of the State within the authority of the Kansas cases, *Western Union Telegraph Co.* v. *Kansas, supra; Pullman Co.* v. *Kansas, supra.* These cases have been followed by others similar in character. *Ludwig* v. *Western Union Telegraph Co.,* 216 U. S. 146; *Western Union Telegraph Co.* v. *Andrews,* 216 U. S. 165; *Atchison, Topeka & Santa Fé Ry. Co.* v. *O'Connor,* 223 U. S. 280; *Oklahoma* v. *Wells, Fargo & Co.,* 223 U. S. 298.

In *Western Union Telegraph Co.* v. *Kansas,* and *Pullman Co.* v. *Kansas,* the statute under which the State of Kansas undertook to levy a charter fee of one-tenth of one per cent. of their authorized capital upon the first $100,000 of the capital stock of foreign corporations and one-twentieth of one per cent. upon the next $400,000, and for each million or major part thereof, $200, making a tax of $20,100 against the Western Union Telegraph Company and $14,800 against the Pullman Company, was declared to be unconstitutional, as having the effect not simply to exert the lawful power of taxing a foreign corporation for the privilege of doing local business, but to burden interstate commerce and to reach property represented by the capital stock of the companies, which was duly paid in and invested in property in many States and therefore beyond the taxing jurisdiction of Kansas. Every case involving the validity of a tax must be decided upon its own facts, and having no disposition to limit the authority of those cases the facts upon which they were decided must not be lost sight of in deciding other and alleged similar cases. In the Kansas cases the business of both complaining companies was commerce, the same instrumentalities and the same agencies carrying on in the same places the business of the companies of state and inter-

state character.   In the *Western Union Telegraph Company Case*, the company had a large amount of property permanently located within the State and between 800 and 900 offices constantly carrying on both state and interstate business.   The Pullman Company had been running a large number of cars within the State, in state and interstate business, for many years.   There was no attempt to separate the intrastate business from the interstate business by the limitations of state lines in its prosecution.

An examination of the previous decisions in this court shows that they have been decided upon the application to the facts of each case of the principles which we have undertaken to state, and a tax has only been invalidated where its necessary effect was to burden interstate commerce or to tax property beyond the jurisdiction of the State.   In the cases at bar the business for which the companies are chartered is not of itself commerce.   True it is that their products are sold and shipped in interstate commerce, and to that extent they are engaged in the business of carrying on interstate commerce and are entitled to the protection of the Federal Constitution against laws burdening commerce of that character. Interstate commerce of all kinds is within the protection of the Constitution of the United States, and it is not within the authority of a State to tax it by burdensome laws.   From the statement of facts it is apparent, however, that each of the corporations in question is carrying on a purely local and domestic business quite separate from its interstate transactions.   That local and domestic business, for the privilege of doing which the State has imposed a tax, is real and substantial and not so connected with interstate commerce as to render a tax upon it a burden upon the interstate business of the companies involved.   In these cases the ultimate contention is not that the receipts from interstate commerce are taxed as such, but that the property of the corporations, including

that used in such commerce, represented by the authorized capital of the corporations, is taxed and therefore interstate commerce is unlawfully burdened by a state statute. While the tax is imposed by taking a percentage of the authorized capital, the agreed facts show that the authorized capital is only a part of the capital of the corporations, respectively. In the *Baltic Mining Company Case,* the authorized capital is $2,500,000, while the entire property and assets are $10,776,000; and in the *White Dental Company Case* the authorized capital is $1,000,000, while the assets aggregate $5,711,718.29. Further, the Massachusetts statute limits the tax to a maximum of $2,000. The conclusion, therefore, that the authorized capital is only used as the measure of a tax, in itself lawful, without the necessary effect of burdening interstate commerce, brings the legislation within the authority of the State. So, if the tax is, as we hold it to be, levied upon a legitimate subject of such taxation, it is not void because imposed upon property beyond the State's jurisdiction, for the property itself is not taxed. In so far as it is represented in the authorized capital stock it is used only as a measure of taxation, and, as we have seen, such measure may be found in property or in the receipts from property not in themselves taxable.

It is further contended that the imposition of the tax denies the equal protection of the laws, and this upon the authority of *Southern Railway Co.* v. *Greene,* 216 U. S. 400. In that case the railway company had gone into the State of Alabama and, under authority of the State, acquired a large amount of railroad property upon which it paid taxes as well as a license tax imposed by the State. After the payment of all such taxes and in this condition of affairs, the State undertook to levy upon the railroad company a privilege tax because it was a foreign corporation, not imposing the same tax upon domestic corporations doing precisely the same business. This court held that the railroad company was a person within the meaning

of the Constitution and entitled to the equal protection
of the laws and that by the taxation of its railroad prop-
erty under such circumstances it was denied the equal
protection of the law, no like tax being levied upon do-
mestic corporations.    It was said in that case (p. 416):

"We have here a foreign corporation within a State, in
compliance with the laws of the State, which has lawfully
acquired a large amount of permanent and valuable
property therein, and which is taxed by a discriminating
method not employed as to domestic corporations of the
same kind, carrying on a precisely similar business."

The conditions existing in the *Southern Railway Co.* v.
*Greene Case* are not presented here.    It is true that the
plaintiffs in error paid taxes assessed against foreign cor-
porations before the passage of the law of 1909 and that
the White Dental Company had a leasehold for storerooms
in the State, but we do not find in this situation an acquisi-
tion of permanent property, such as was shown in the
*Greene Case.*    And there is no question of the continued
authority of the State to tax a foreign corporation for the
privilege of doing business within its borders, which au-
thority the State possesses so long as it does not violate
rights secured by the Federal Constitution.    Even if, as
plaintiffs in error contend, under the statute, domestic
corporations are favored, the statute is not invalid, for
no limitation upon the power of a State to exclude foreign
corporations requires identical taxes in all cases upon
domestic and foreign corporations.

As this statute has been construed by the Supreme Ju-
dicial Court of Massachusetts, and applied in these cases,
we are unable to find that the tax imposed violates the
constitutional rights of the plaintiffs in error.

*Judgments affirmed.*


Dissenting: THE CHIEF JUSTICE, MR. JUSTICE VAN DE-
VANTER and MR. JUSTICE PITNEY.