CRANE CO. v. LOONEY, Atty. Gen., et al.

(District Court, N. D. Texas, at Dallas.   December 15, 1914.)

1. CORPORATIONS (§ 636*)—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS WITHIN STATE—FRANCHISE TAX.

A state may impose on particular classes of foreign corporations a franchise or privilege tax as a condition to their right to do business within the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571; Dec. Dig. § 636.*]

2. CORPORATIONS (§ 648*)—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN STATE—FRANCHISE TAX—AMOUNT.

The validity of a franchise tax imposed on the right of a foreign corporation to do business within a state does not depend on the mode which the state may adopt in fixing the amount which it will exact for the franchise for any year.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2516; Dec. Dig. § 648.*]

3. COMMERCE (§ 69*)—CORPORATE FRANCHISE TAX—DOING BUSINESS WITHIN STATE.

Rev. St. Tex. 1911, arts. 3837, 7394, imposing a franchise tax on any foreign corporation, as a condition to its right to do business in Texas, of a given percentage of all the corporation's capital and surplus, representing all of its property, wherever situated, and all of its business, both intrastate and interstate, thereby placing a tax on the corporation's property rights beyond the jurisdiction of the state for taxation purposes, are unconstitutional.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113–119; Dec. Dig. § 69.*]

In Equity.   Suit by the Crane Company against Ben F. Looney, Attorney General, and another.   On application for a temporary injunction.   Granted.

Etheridge, McCormick & Bromberg, of Dallas, Tex., for complainant.

Ben F. Looney, Atty. Gen., and C. A. Sweeton and C. M. Cureton, Asst. Attys. Gen., for defendants.

Before WALKER, Circuit Judge, and MEEK and CALL, District Judges.

MEEK, District Judge.   This case is brought by the Crane Company, an Illinois corporation, against Ben F. Looney, as Attorney General of the state of Texas, and against F. C. Weinert, as Secretary of State of the state of Texas, for the purpose of restraining the defendants in their official capacities from enforcing against plaintiff the provisions of articles 3837 and 7394 of the Revised Statutes of Texas (1911).

It appears from plaintiff's bill and from the evidence that under its charter it is engaged in the business of manufacturing, buying, selling, and otherwise dealing in various lines of hardware, builders' supplies and material, and agricultural machinery and supplies; that more than 20 years ago plaintiff entered the state of Texas with its goods, wares, and merchandise, selling them through traveling salesmen, who took or-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ders and sent them to the plaintiff's principal office and place of business at Chicago, Ill., for acceptance and filling through shipment; that it received, accepted, and filled orders sent it through the mails from merchants living in Texas; that for many years it has been engaged in interstate commerce between Texas and the other states of the Union; that for the purpose of facilitating the transaction of its business, and in order that it might the more conveniently serve those with whom it transacted such commerce, it established agencies throughout the country, an agency having been established in Dallas, Tex., in 1904. It also appears that during the year 1905 the plaintiff applied for and secured from the state of Texas a permit to do business within the state for the succeeding 10 years; that during the time intervening between the year 1906 and the time of the filing of this bill it has conducted an extensive interstate and intrastate business, and has made permanent investments in the city of Dallas, Tex., in the way of a lot, building, and equipment for the more efficient and economical conduct of such business.

It is shown that plaintiff's present permit to do an intrastate business in Texas expires on the 15th day of January, 1915, and plaintiff avers that it will not apply to the Secretary of State for a renewal of this permit, nor meet the conditions in the way of the payment of fees necessary to secure such permit; that it will not, at the expiration of the present franchise tax on May 1, 1915, pay a franchise tax in compliance with the laws of the state for the fiscal year ending May 1, 1916. Plaintiff further avers that the defendants, the Attorney General and the Secretary of State, will undertake to enforce the laws of the state of Texas against it, and it will thereby be harassed, annoyed, and impeded in transacting its business in interstate commerce and the business inseparably connected therewith, and will also be ousted from doing an intrastate business in said state.

The plaintiff assails the validity of articles 3837 and 7394 of the Revised Statutes of Texas (1911), and alleges that their provisions are in violation of the rights of plaintiff guaranteed to it under the Constitution of the United States (article 1, § 8, par. 4), which, among other things, grants the Congress the power to regulate commerce among the several states, and under the first section of the fourteenth amendment to the Constitution of the United States, which guarantees plaintiff against being deprived by any state of its property without due process of law and against being deprived of the equal protection of the law. The part of article 3837 applicable to the plaintiff and here complained of is as follows:

"For each foreign corporation obtaining permit to do business in this state shall pay fees as follows: Fifty dollars for the first ten thousand dollars of its authorized capital stock, and ten dollars for each additional ten thousand dollars, or fractional part thereof: Provided, that the fee required to be paid by any foreign corporation for a permit to engage in the manufacture, sale, rental, lease or operation of all kinds of cars, or to engage in conducting, operating or managing any telegraph lines in this state, shall in no event exceed ten thousand dollars; provided, however, that mutual building and loan companies, so called, whose stock is not permanent, but withdrawable, shall pay a fee of fifty dollars for the first one hundred thousand dollars, or a fractional part thereof, of its authorized capital stock, and ten dollars for each

additional one hundred thousand dollars, or a fractional part thereof; and where the company is a foreign one, then the fee shall be based upon the capital invested in the state of Texas. (Acts 1907, S. S. p. 500. Acts 1905, p. 135. Acts 1889, p. 93. Acts 1889, p. 87. Acts 1883, p. 72. Acts 1909, S. S. p. 267.)"

## Article 7394 is as follows:

"Art. 7394. Tax to be Paid by Foreign Corporations.—Except as herein provided, each and every foreign corporation, authorized, or that may hereafter be authorized to do business in this state, shall on or before the first day of May of each year, pay in advance to the secretary of state a franchise tax for the year following, which shall be computed as follows, viz.: One dollar on each one thousand dollars, or fractional part thereof, of the authorized capital stock of the corporation up to and including one hundred thousand dollars, and two dollars on each five thousand dollars or fractional part thereof of such stock in excess of one hundred thousand dollars and up to and including one million dollars, and two dollars on each twenty thousand dollars, or fractional part thereof, of such stock in excess of one million dollars, and up to and including ten million dollars, and two dollars on each fifty thousand dollars of such stock in excess of ten million dollars, unless the total amount of the capital stock of such corporation issued and outstanding, plus its surplus and undivided profits shall exceed its authorized capital stock; and in that event the franchise tax of such corporation for the year following shall be two dollars on each one thousand dollars, or fractional part thereof, of the authorized capital stock of such corporation, issued and outstanding, plus its surplus and undivided profits, up to and including one hundred thousand dollars, and two dollars on each five thousand dollars, or fractional part thereof, of such stock, surplus and undivided profits in excess of one hundred thousand dollars, and up to and including one million dollars, and two dollars on each twenty thousand dollars, or fractional part thereof, of such stock, surplus and undivided profits in excess of one million dollars, and up to and including ten million dollars, and two dollars on each fifty thousand dollars of such stock, surplus and undivided profits in excess of ten million dollars; provided, that such franchise tax shall not in any case be less than twenty-five dollars. (Acts 1907, p. 503, sec. 2.)"

It is revealed that the business of plaintiff under its charter is not itself commerce. It is engaged in the manufacture and sale of certain goods and in the purchase and sale of the goods of other manufacturers. The greater part of these goods are disposed of in interstate commerce, and a small portion in intrastate commerce in Texas. A decidedly preponderating percentage of the plaintiff's property is located outside the state of Texas. The same preponderating percentage of its business is done outside the state.

[1] By the terms of the above statutes the state sought to fix upon certain classes of foreign corporations an excise tax for the privilege of exercising their franchises within the state of Texas. That a franchise tax of this character is within the power of the state to levy there can be no question. Maine v. Grand Trunk Railway Co., 142 U. S. 228, 12 Sup. Ct. 121, 163, 35 L. Ed. 994.

[2] The validity of the tax can in no way be dependent upon the mode which the state may deem fit to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows. Home Insurance Co. v. New York, 134 U. S. 594, 10 Sup. Ct. 593, 33 L. Ed. 1025. However, a state cannot say to a corporation: "You may do business within our borders if you permit

your property to be taken without due process of law, or you may transact business in interstate commerce subject to the regulatory power of the state. To allow a state to exercise such authority would permit it to deprive of fundamental rights those entitled to the protection of the Constitution in every part of the Union;" but a tax levied by the state upon the right of a corporation to do business in the state (that is, a franchise tax) will not be invalidated unless its necessary effect is to burden interstate commerce. Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127.

[3] Does compliance by the plaintiff with the statutes here complained of impose a burden upon interstate commerce, or violate the provisions of the first section of the fourteenth amendment to the Constitution? The necessary effect of the enforcement of the two statutes brought into question is to make plaintiff's right to do a Texas intrastate business dependent upon the payment of a sum which becomes greater or less according as its assets outside of the state and its interstate and foreign business grow greater or smaller, though its property situated in Texas and its intrastate business there may remain stationary. The case of the Baltic Mining Company, cited supra, was not one in which there was any such necessary relation between the amount of the excise charge and the amount or value of the corporation's property outside of the state or of its interstate or foreign business. The charge imposed by the statute there in question was measured by the amount of the par value of its authorized capital, without regard to the actual value of its assets, whether more or less than that of its nominal capital stock. The charge was not measured by the amount or value of the corporation's assets or the extent of its actual business anywhere or of any kind. The terms of the statute made the charge the same, whether the actual value of the assets of the corporation was more or less than the amount of the par value of its authorized capital stock, and whatever may have been the nature or extent of the business in which it was engaged. Nothing said in the opinion rendered in that case indicates the court's departure from or modification of the rule announced in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 42, 30 Sup. Ct. 190, 54 L. Ed. 355, to the effect that a state may not forbid the doing of a local business within its limits by a corporation of another state or foreign country except subject to the condition that such corporation first pay to the state a given per cent. of its entire capitalization, representing the value of all its business, property, and interests within and without the state, thereby placing a direct burden on the privilege or franchise of transacting interstate commerce and taxing property rights beyond the jurisdiction of the state for purposes of taxation. The joint effect of the two statutes, considered together, as they must be, as the right of the corporation to do business in the state is withheld if either of them is not complied with, is to make the privilege of doing a local business in Texas subject to the condition that it shall first pay to the state a given per cent. of all its capital and surplus, representing all of its property wherever situated, and all its business, intrastate and interstate.

An imposition which is based, whether in whole or in substantial **part, on the value of property outside of the state, or on interstate or**

foreign commerce engaged in, so that the amount of it grows in exact proportion to the growth of such property or commerce, is a burden on such property or commerce. This burden the state cannot impose, either directly or as a condition to the grant of a privilege which it may confer or withold. The statutes in question so obviously impose such a burden that it is not permissible to regard them as privilege taxes or excises, the amount of which is determined by something not having a necessary relation to the amount or value of things which are not subjects of the state's taxing power. The exactions being so made that the amount of them cannot be determined without taking into account the amount of property and business which are not subject to state taxation, and being greater or less according as such property or business is greater or less, the necessary effect of the enforcement of them is to burden such property or business.

The court is therefore constrained to grant the preliminary injunction prayed for, and an order will be entered accordingly.