BADGER v. CROCKETT, Secretary of State, et al.

No. 4327.   Decided October 7, 1927.   (259 P. 921.)

*Harvey H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen., for appellants.

*Booth, Lee, Badger, Rich & Rich,* of Salt Lake City, for respondent.

GIDEON J.

Respondent brings this action as assignee of the J. C. Penney Company, a Delaware corporation. Appellants are, respectively, the secretary of state and state treasurer of the state of Utah. The Attorney General of the state appeared in the action for appellants and filed a general demurrer to the complaint. The demurrer was overruled. Appellants elected to stand on their demurrer and declined to plead further. A stipulation by the parties waiving findings of fact and conclusions of law was made. The court below then entered judgment against appellants and in favor of respondent for the amount claimed. From that judgment this appeal is prosecuted.

An opinion by a majority of this court as then constituted reversing the judgment was filed in December, 1926. Subsequently an application for rehearing was made by respondent. Rehearing was granted and the cause was again argued orally. Respondent has also filed an additional or supplemental brief. The former opinion is recalled and will not be published. The views herein expressed will constitute the opinion of the court in the case.

The material facts in the complaint and admitted by the demurrer are: The J. C. Penney Company was incorporated under the laws of Delaware on December 15, 1924. This corporation succeeded to all the property and business of a

corporation by the same name organized and existing under and by virtue of the laws of the state of Utah. The Utah corporation was incorporated in January, 1913, and was at the date of the organization of respondent's assignor, and theretofore had been engaged both in local business in the state of Utah and in interstate commerce. The authorized capital stock of the Utah corporation was $20,000,000; of the Delaware corporation $45,000,000. The property to which the Delaware corporation succeeded consisted of 678 retail stores, with goods, wares, and merchandise therein and goods and merchandise in warehouses and in transit. Twenty-four of said retail stores are located in Utah, while the other 654 are located in various states of the Union.

It is alleged in the complaint that the approximate value of the property located in Utah at the date mentioned in the complaint was $660,000; that the remainder of the assets which respondent's assignor took over was located in other states and in transit from factories and warehouses to the various stores owned by it. It is also alleged that respondent's assignor owned warehouses in states other than Utah, and that goods and merchandise were constantly being shipped and distributed to the various stores situated in this state and in other states. It is further alleged that at the same time that the Delaware corporation succeeeded to the rights of the Utah corporation the entire property, consisting of property in the various stores and in course of transportation in interstate commerce, was of the reasonable value of approximately $20,664,319.72. The assessed value of all property in the state of Utah for the year 1924 was $449,987.48. The assessed value of the property of the Delaware corporation in the state for the year 1925 was $399,200.45. It is also alleged that the J. C. Penney Company, the Utah corporation, during its existence and up to December 31, 1924, was assessed by the state of Utah by its taxing subdivisions upon all property real and personal, including merchandise in its various stores in Utah, and that all taxes so assessed against said corporation were paid

by said Utah corporation; that respondent's assignor was likewise assessed since it succeeded to the property of the Utah corporation and has paid the taxes so assessed. There are other allegations as to the amounts of taxes paid, but these are not material here. The amount of the retail business of the Utah corporation in 1924 was approximately $95,000,000. Of that amount $2,500,000 was done within the state of Utah.

It is recited in the complaint that respondent's assignor made application to the secretary of state of the state of Utah to file its articles of incorporation and to receive a certificate of authority permitting it to transact business in the state as a corporation; that upon the application being made, that officer demanded 25 cents on each $1,000 par value of its authorized capital stock as the same appears from its articles of incorporation, amounting to $11,250. This fee was paid under protest. There is also an allegation that the secretary of state was authorized to collect only on the value of the property owned by the Delaware corporation located in Utah. It further alleged that by reason of the property of the Delaware corporation not being within the state of Utah except the sum of $660,000, such property is not taxable in this state "for the reason that the capital stock represented by said tax is situated, used and employed wholly without the state of Utah and in the interstate business of said Delaware corporation." The following allegations also appear in the complaint:

"That said section 2511, Compiled laws of Utah, is obnoxious and repugnant to and contravenes article 1, § 8, subsec. 3 (the commerce clause) of the Constitution of the United States, because said section 2511 levies a tax which directly lays a burden upon interstate commerce.

"That said section 2511, Compiled Laws of Utah, is obnoxious and repugnant to and contravenes article 14, sec. 1 (the due process of law clause) of the Constitution of the United States, because said section 2511 attempts to tax property wholly situate and being without the territorial jurisdiction of the state of Utah."

This suit was instituted to recover all of the fee so paid under protest except the sum of $165.00, which amount it is conceded the secretary of state was authorized to collect. Judgment was entered in favor of respondent and against appellants for $11,085, this amount being the alleged excess fee paid.

Comp. Laws Utah 1917, § 2511, specifying fees to be collected by the secretary of state, so far as material here, is as follows:

"For receiving and filing each original or certified copy of articles of incorporation, 25 cents on each $1,000 of the authorized capital stock of the company or corporation."

Section 945 of the same compilation, as amended by Laws Utah 1919, c. 17, and then in force, and under which the application for the permit was made, is as follows:

"All corporations, excepting insurance corporations, not organized under the laws of this state, before doing any business within the state, shall file with the county clerk of the county in which their principal office in the state may be situated, a copy of their articles, by-laws, and amendments certified by the secretary of state of the state wherein the same are incorporated, together with an acceptance of the provisions of the Constitution of the state, and designation of some person residing in said county upon whom all legal process may be served; and within ten days thereafter shall also file with the secretary of state copies of all the foregoing duly certified by such county clerk."

The right of the state to exact the fee provided for in section 2511, supra, as a condition precedent to doing a local business in this state is challenged as being violative of the commerce clause and the due process provision of the federal Constitution. The concrete question here, therefore, is whether the State of Utah, under the conceded facts, may legally demand of respondent's assignor as a condition precedent to doing a local business in the State of Utah the tax or fee specified in section 2511, supra.

This necessarily involves a consideration of the limitations placed by the federal Constitution upon states in attempting to regulate corporations or others engaged in interstate commerce and in intrastate business in this state, and likewise a consideration of the right of a state to impose taxes upon property located outside of its jurisdiction.

The Supreme Court of the United State is the final arbiter of whether a state statute violates the federal Constitution, and its judgments or conclusions are necessarily binding upon the state courts. If that tribunal has decided the question here presented, or has announced rules or principles of construction that are determinative of the rights of the parties, then clearly it is our duty to conform our ruling herein to the holdings of that court. Practically all, if not all, of the decisions of that court having any relation to or bearing upon the question here under review are cited in the briefs of counsel and many of the cases are discussed at some length. It would probably serve no good purpose to attempt a review of those cases. We are satisfied from an examination of these cases that the question here under review permits of but one answer; namely, that the judgment of the district court should be affirmed.

In *International Paper Co.* v. *Massachusetts*, 246 U. S. at p. 141, 38 S. Ct. 294, 62 L. Ed. 624, Ann. Cas. 1918C, 617, the court has stated certain rules or principles to be controlling in the construction of a state statute such as ours, as the same may relate to a corporation engaged in interstate commerce, as follows:

"1. The power of a state to regulate the transaction of a local business within its borders by a foreign corporation—meaning a corporation of a sister state—is not unrestricted or absolute, but must be exerted in subordination to the limitations which the Constitution places on state action.

"2. Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a state statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted.

"3. Consistently with the due process clause, a state cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the state.

"4. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a state in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the state cannot require the corporation as a condition of the right to do a local business therein to submit to a tax on its interstate business or on its property outside of the state.

"5. A license fee or excise of a given per cent of the entire authorized capital of a foreign corporation doing both a local and interstate business in several states, although declared by the state imposing it to be merely a charge for the privilege of conducting a local business therein, is essentially and for every practical purpose a tax on the entire business of the corporation, including that what is interstate, and on its entire property, including that in other states; and this because the capital stock of the corporation represents all its business of every class and all its property wherever located.

"6. When tested, as it must be, by its substance—its essential and practical operation—rather than its form or local characterization, such a license fee or excise is unconstitutional and void as illegally burdening interstate commerce and also as wanting in due process because laying a tax on property beyond the jurisdiction of the state."

These rules or principles so announced were deducible from former opinions of the court. The court in a later case has reaffirmed the foregoing canons of construction. *Airway Electric Appliance Corp.* v. *Day,* 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169.

In the course of the opinion in *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355, in considering a question similar to the one under review here, it is said:

"Looking, then, at the natural and reasonable effect of the statute, disregarding mere forms of expression, it is clear that the making of the payment by the telegraph company, as a character fee, of a given per cent *of its authorized capital,* representing, as that capital clearly does, *all* of its business and property, both within and *outside of the state,* a *condition* of its right to do local business in Kansas,

is, in its essence, not simply a tax for the privilege of doing local business in the state, but a burden and tax on the company's interstate business and on its property located or used outside of the state. The express words of the statute leave no doubt as to what is the *basis* on which the fee specified in the statute, rests. That fee, plainly, is not based on such of the company's capital stock as is represented in its local business and property in Kansas. The requirement is a given per cent of the company's authorized capital, that is, all its capital, wherever or however employed, whether in the United States or in foreign countries, and whatever may be the extent of its lines in Kansas as compared with its lines outside of that state. What part of the fee exacted is to be attributed to the company's domestic business in Kansas and what part to interstate business, the state has not chosen to ascertain and declare in the statute. It strikes at the company's entire business wherever conducted and its property wherever located, and, in terms, makes it a *condition* of the telegraph company's right to transact purely local business in Kansas that it shall contribute for the benefit of the state school fund a given per cent of its whole authorized capital, representing all of its property and all its business and interests everywhere."

In a recent case, possibly the most recent expression of that court on the question under consideration, to wit, *Alpha Cement Co.* v. *Massachusetts,* 268 U. S. at p. 218, 45 S. Ct. 481, 69 L. Ed. 916, 44 A. L. R. 1219, is found this language:

"It must now be regarded as settled that a state may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause; and the Fourteenth Amendment does not permit taxation of property beyond the state's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87 [34 S. Ct. 15, 58 L. Ed. 127], tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."

Among other cases cited in the brief of respondent are *Kansas City Steel Co.* v. *Arkansas,* 269 U. S. 148, 46 S. Ct. 59, 70 L. Ed. 204; *Pullman Company* v. *Kansas,* 216 U. S. 56, 30 S. Ct. 232, 54 L. Ed. 378; *Ludwig* v. *Western Union Tel.*

*Co.,* 216 U. S. 146, 30 S. Ct. 280, 54 L. Ed. 423; *Baltic Min. Co.* v. *Massachusetts,* 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127; *Looney* v. *Crane,* 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230; *Locomobile Company of America v. Massachussetts,* 246 U. S. 135, 38 S. Ct. 298, 62 L. Ed. 231; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493.

The Supreme Court of California, in a very recent case, has had before it almost the identical question presented here. *Perkins Mfg. Co.* v. *Jordan,* 254 P. 551. In that case the court reviewed not only its own opinions, but many of the cases relied on by respondent in this proceeding. The court in that case held a state statute in many respects similar to our section 2511, supra, when applied to a foreign corporation doing an interstate business and seeking a permit to do intrastate business within the state of California, to be violative of the federal Constitution, both as contravening the commerce clause and the due process clause thereof.

It is conceded by appellants that the capital of the corporation actually used in the business done in Utah is relatively a small per cent of the capital invested or used in conducting the interstate business or local intrastate business in other states. The exacting of this tax or fee in its practical operation must of necessity be a burden upon interstate commerce and a tax upon property beyond the jurisdiction of the state, all of which is prohibited by the federal Constitution.

No criticism can be or should be made of the secretary of state for demanding the fee that he did. The plain intent of the Legislature by the express language of section 2511, supra, required that officer to collect 25 cents on each $1,000 of the capital stock of the Delaware corporation before before filing its articles of incorporation or issuing a certificate authorizing it to do a local business in this state. The fault is with the statute in placing a restriction not permis-

sible by the federal Constitution upon corporations engaged in interstate commerce desiring to do local business in this state. It is probably not amiss to state that the Legislature has removed the objection to the statute by a later enactment, and the question here considered cannot again arise in this state.

Judgment affirmed.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.