ULRIE U. HISKEY and MARIAN M. HISKEY, his Wife, Respondents, v. THE PACIFIC STATES SAVINGS, LOAN & BUILDING COMPANY, a Corporation, Appellant.

No. 1511. (76 Pac. 20.)

1. **Building and Loan Associations: Foreign Corporations: Rights: Contracts.**

    By complying with the requirements of the State laws, foreign corporations are accorded the same, and no other or greater, rights and privileges, and the same protection of the laws, as domestic corporations, and the making and enforcement of their contracts are governed by the same rules.

2. **Same: Borrowing Members: Credits.**

    Borrowing members of a building and loan association are entitled to have monthly payments of dues and premiums credited on the amount borrowed.

3. **Same: Repayment of Loans: Statutory Provisions.**

    Foreign building and loan associations are presumed to have entered into contracts with persons in this State with notice of the existence, of Revised Statutes 1898, section 396, which permits borrowers in such associations to repay loans at any time on duly complying with the charter and by-laws.

4. **Same.**

    Under Revised Statutes 1898, section 396, which permits borrowers from building and loan associations to repay loans at any time in compliance with the charter and by-laws, a borrower who complied with the by-laws up to the time of remitting the last payment, which wiped out the principal indebtedness, was discharged from his contract, and entitled to have the land and mortgage securing payment canceled, regardless of the conscionableness or unconscionableness of the contract.

5. **Same: Estoppel.**

    A party to a suit is never estopped from availing himself of every defense sanctioned by the law, in the absence of some showing that he resorted to deceit, fraud, or misrepre-

sentation by which the other party, who, being ignorant of the real facts, and acting under such misrepresentations, fraud, or deceit, was misled thereby to his injury.[1]

6. Same.

There is no estoppel where all the facts and circumstances leading up to the transaction in controversy were equally within the knowledge of both parties.

(Decided April 1, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall,* Judge.

Action to have a certain loan declared fully paid and to cancel a certain bond, secured by mortgage, securing the same. From a judgment in favor of the plaintiffs, the defendant appealed.

AFFIRMED.

*Messrs. Booth, Lee & Ritchie* for appellant.

*J. R. Bowdle, Esq.,* for respondents.

STATEMENT OF FACTS.

The complaint in this case alleges that the defendant is a corporation organized under the laws of the State of California; that on December 7, 1896, at Salt Lake City, Utah, the defendant loaned to plaintiffs $1,-300, for which they gave a bond which recites, so far as material here, that Ulrie U. Hiskey and Marian M. Hiskey, husband and wife, of Salt Lake City, Utah, are held unto the Pacific States Savings, Loan & Building Company, a corporation (defendant herein) of California, in the sum of $1,922.70, to be paid to the said company at its office in the city and county of San Francisco, Cal. It is further recited in the bond that the condition of the obligation is such that said Ulrie U. Hiskey is a stock-

---

[1] Trust Co. v. Wagener, 12 Utah 1, 40 Pac. 764, and cases cited.

holder and owner of 13 shares of Class D, of the capital stock of said corporation, and, with actual notice of its by-laws, he has bid the sum of $565.50, to be paid in 87 consecutive monthly installments of $6.50 each, as and for a premium for the advancement of the corporation to said Ulrie U. and Marian M. Hiskey of the sum of $1,300, by way of anticipation of the value at maturity of said 13 shares held and owned as aforesaid by Ulrie U. Hiskey; that the corporation accepted the bid, and advanced to Ulrie U. and Marian M. Hiskey the sum of $1,300, in consideration of said premium, and by way of such anticipation. The bond further provides that if Ulrie U. and Marian M. Hiskey shall pay unto said corporation, at its office in San Francisco, on the second Tuesday of the month of December, 1896, and on the second Tuesday of each and every calendar month thereafter, the following sums of money: First, the sum of $9.10 for monthly dues on said 13 shares, Class D, capital stock, owned by said Ulrie U. Hiskey, and by him assigned to said corporation as security for the faithful performance of the conditions of the bond; second, the sum of $6.50 for the monthly installment of interest on said sum of $1,300, at the rate of 6 per cent per annum, from December 8, 1896; third, the sum of $6.50 for monthly installments of premium, and also all fines and charges until said 13 shares of stock become fully paid up, and of the par value of $100 per share, and shall surrender said 13 shares of stock to said corporation—then the obligation (bond) shall become void; otherwise, etc. It is stipulated in the bond that when 87 consecutive monthly payments of the respective sums above mentioned, and payment of all fines and charges assessed against said shares of stock, shall be made in accordance with the by-laws of said corporation, such payments, "when made, as aforesaid, shall, though the said 13 shares of stock may not have matured, be held to be equivalent and tantamount to such maturity; and on the surrendering of said stock, as hereinbefore set forth, shall cause this obligation to become void. Provided,

always, . . . if . . . default be made in payment of said monthly dues . . . or monthly installments of interest, or monthly installments of premium . . . for six months after due . . . then in either or any such case the whole sum advanced, to-wit: $1,300.00, shall become due and payable, and the whole of the same less the withdrawal value, as determined in accordance with the by-laws of said corporation, of such 13 shares of stock, may be enforced and recovered, and all installments of interest and also such portions of said premium as shall, at the time of such election, have become due and payable, as aforesaid, and all fines for default in payment of said monthly dues which under and by virtue of the said by-laws may have attached to and become due on said stock, with all costs and disbursements," etc., "Ulrie U. Hiskey, Marian M. Hiskey." Said bond was secured by a mortgage, duly recorded, in substance as follows: "This mortgage is given to secure a loan of $1,300.00, evidenced by a certain bond . . . whereby the said first parties did covenant . . . to pay to the said second party the following monthly payments on the second Tuesday of December, 1896, and monthly thereafter, to-wit: $9.10 dues on 13 shares of stock, and all fines imposed in accordance with the by-laws; $6.50 monthly installment of interest on said sum at 6 per cent. Also $6.50 monthly installment of premium bid by said first parties all in accordance with the terms and conditions expressed in said bond, which is hereby referred to, made a part hereof, and is secured by this mortgage. . . ." It is further alleged "that plaintiffs, beginning December, 1896, and ending June 19, 1901, made regularly each month 55 payments, of $22.10 each, and that on July 9, 1901, they made a payment of $444.20, the total amounting, to $1,659.70; that, by the payments made as aforesaid by plaintiffs to said defendant, said loan and interest was fully paid; that the certificate of stock for the thirteen shares of the capital stack of the defendant mentioned in said bond and mortgage was at the time

said loan was made as aforesaid assigned by the plaintiff Ulrie U. Hiskey to said defendant, and by him delivered to it, and has been ever since and is now in the possession of said defendant; that the plaintiffs, and each of them, hereby relinquish to said defendant all their right, title, and interest in and to said thirteen shares of stock, and any money thereby represented, and that is or hereafter may become due thereon; that since the said 9th day of July, 1901, and ever since said loan and interest was fully paid, the plaintiffs have requested the defendant to deliver up said bond to them and cancel said mortgage of record, all of which said defendant has refused and neglected, and still refuses and neglects, to do.    Wherefore plaintiffs pray that this court declare that said loan and interest have been fully paid and order said defendant to cancel and deliver up said bond and mortgage to the plaintiffs.'' Defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.    The demurrer was overruled.    Defendant then answered, admitting that it is a corporation, as alleged in the complaint, and that it advanced and loaned the plaintiffs the sum of $1,300, evidenced by the bond set out in the complaint, and that plaintiffs have made the payments thereon as alleged in their complaint, but denies that thereby the loan and interest, or either, were fully paid July 9, 1901, or at any other time.    Defendant then set out in its answer the conditions under which the loan was made, as they appear in the complaint, and, in addition thereto, set out the bid made for the loan, which, in part, recites that the plaintiff Ulrie U. Hiskey, being the owner of 13 shares of Class D stock of the corporation, desires to borrow thereon $1,300; and then follows a promise to pay the loan by monthly payments as provided in the bond, specifying the respective amounts to be paid each month for 87 consecutive months.    Defendant, as an affirmative defense, then alleges that plaintiffs procured said loan by misrepresentations made by them to defendant company, and that defendant was induced

by such misrepresentations and by the conduct of plaintiffs, calculated to deceive, and which did deceive, to make said loan, and that plaintiffs, because of such deceit and misrepresentations, are estopped from alleging that the loan has been fully paid. Plaintiffs interposed a demurrer to the answer on the ground that it did not state facts sufficient to constitute a defense. The demurrer was sustained. Defendant declined to amend, and judgment was entered in favor of plaintiffs, in accordance with the prayer of their complaint. Defendant appeals.

McCARTY, J., after making the foregoing statement of the case, delivered the opinion of the court.

Counsel for appellant contend that the trial court, by overruling the demurrer to the complaint, and entering judgment cancelling the bond and mortgage, deprived appellant of a right guaranteed by the Constitution of this State. They say in their brief: "The question whether the plaintiffs should be upheld in their refusal to abide by the contract involves a constitutional right conferred by the Constitution of Utah, and that is that all persons have the right to acquire, possess, and protect property." They then proceed to discuss the question on the theory that the parties to the contract under consideration having exercised their inherent and constitutional rights by entering into it, appellant is entitled to have it enforced in accordance with its terms, and that "to deny this right is to deny appellant the equal protection of the laws." This contention is entirely without merit. By complying with the requirements of the laws of this State, foreign corporations are accorded the same rights and privileges, and the same protection of the laws, as are extended to domestic corporations. The same rules governing the making and enforcement of contracts apply to all alike, and the fact that appellant is a foreign corporation does not entitle it to any greater or other privileges than

those lawfully exercised by corporations created and existing under and by virtue of the laws of this State.

The paramount and vital question, however, in this case is, was the payment of $444.20 made by plaintiffs July 9, 1901, a liquidation of the debt; the sum thus paid being more than equal to the unpaid balance of the principal, $1,300? The monthly payments of dues and premiums made by plaintiffs up to this time amounted to a sum total of $858. These payments, under what is now the settled law of this State, plaintiffs were entitled to have credited on the amount borrowed, to-wit, the $1,300. The different amounts paid by plaintiffs under the contract, including the monthly payment of $6.50, as interest, aggregate $1,659.70, which they claim wipes out the debt, and cancels all obligations created by the contract on their part. Appellant insists that there is still due from plaintiffs on the contract the sum of $263; this being the difference between the amount ($1,659.70) paid in by them and $1,922.70, the amount or sum total for which they obligated themselves in the bond and mortgage. In 1890 the Legislature passed a law authorizing the formation of building and loan associations in this State (then Territory), and prescribing certain rules and regulations by which they are to be governed. Section 1 of the act, in part, provides "that whenever any number of persons, not less than five residents of the territory, may desire to become incorporated as a mutual building, loan and homestead association, for the purpose of loaning money to the members thereof only," etc. Section 10 provides as follows: "A borrower may repay the loan at any time upon duly complying with the charter and by-laws in relation to repayment of loans." Sess. Laws Utah 1890, pp. 7-10. While there have been some changes made in the law by subsequent legislation, section 10 is continued in force literally by section 396, Rev. St. 1898; and appellant, although a foreign corporation, is presumed to have entered into the contract with notice of the existence of this law.

It is not claimed but what plaintiffs complied with the by-laws of the corporation up to the time they remitted their last payment of $444.20, and wiped out the principal indebtedness of $1,300. Therefore, under the foregoing provisions of the statute their obligations under the contract were discharged, and they were entitled to have the bond and mortgage canceled, regardless of the conscionableness or unconscionableness of the contract.

Counsel for the appellant have briefly discussed the question of estoppel; claiming that, as plaintiffs solicited the loan and entered into the contract with full knowledge of the terms thereof, they are estopped from claiming that the obligations have been fully discharged. A party to a suit is never estopped from availing himself of every defense sanctioned by the law, in the absence of some showing that he resorted to deceit, fraud, or misrepresentation by which the other party, who, being ignorant of the real facts, and acting under such misrepresentations, fraud, or deceit, was misled thereby to his injury. Trust Co. v. Wagener, 12 Utah 1, 40 Pac. 764, and cases therein cited. It is manifest that there is no fact alleged in the answer in this case, which, if proved, would constitute an estoppel. The pleadings show that all of the facts and circumstances surrounding and leading up to the transaction and upon which the loan was based, were equally within the knowledge of appellant and respondents.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.