ROBERT HORNER *v.* ALBERT HORNER AND THEO.
H. DAVIES & CO., LIMITED.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JANUARY 6, 1914.          DECIDED JANUARY 24, 1914.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

ESTOPPEL—*misrepresentation—knowledge of facts.*

In order to establish an estoppel based upon a misrepresentation of a material fact the party asserting the estoppel must show that he relied on the truth of the representation, and it is a rule of general application that there can be no estoppel for misrepresentation where the party asserting it knew the facts or had at hand ready means of ascertaining them before he acted.

OPINION OF THE COURT BY ROBERTSON, C.J.

This suit was instituted by Robert Horner against Albert Horner for the dissolution of the partnership of J. M. Horner & Sons, and for an accounting. H. Hackfeld & Company, Limited, was also made a party defendant upon the claim that, as former agent of the firm, it had, during the year 1911, received certain moneys aggregating the sum of $32,500 of which it had paid to Albert Horner the sum of $15,410.42 which it was alleged was in excess of his proportionate share as a member of the firm, the balance remaining in the possession of said Hackfeld & Compny. The plaintiff claimed to be entitled to

receive from the defendants the sum of $20,893.41. Demurrers: interposed by the defendants were overruled. Thereupon H. Hackfeld & Company, Limited, represented to the court that it had no interest in the suit, that the sum of $17,089.58 remaining in its possession was claimed by Theo. H. Davies & Company, Limited, as well as by the plaintiff, and offered to pay that sum into court to the end that the claimants might interplead and settle their claims between themselves. The court made an order that the money be paid into court in accordance with the motion; that H. Hackfeld & Company, Limited, be discharged from liability; and that Theo. H. Davies & Company, Limited, be substituted as defendant. The substituted defendant filed a lengthy plea and answer in which it set forth its claim to the fund in court except as to $2627.50 which it conceded to be due the plaintiff. After a protracted hearing the circuit judge rendered a decision in favor of the defendant's contentions and, on September 19, 1913, entered a decree that the fund in court, except the sum of $2627.50 held to be payable to the plaintiff, should be paid to Davies & Company; that the firm of J. M. Horner & Sons be dissolved; and that the plaintiff pay the costs of suit. The plaintiff appeals. There was considerable conflict in the testimony on minor points but there seemed to be little or no dispute as to the main and essential facts.

It appears that on December 5, 1911, the plaintiff agreed to sell and Davies & Company agreed to buy 1262 shares of the 2400 shares of the capital stock of the Kukaiau Plantation Company, Limited, a corporation operating a sugar plantation and a ranch on the Island of Hawaii, also the plaintiff's interest in the Kukaiau mill and landing of which the firm of J. M. Horner & Sons owned respectively one-half and one-fourth, it being understood by both parties that the plaintiff's ownership in said firm's interests in the mill and landing was in the same proportion as his ownership in the corporation. The purchase price agreed upon was $260,000. Shortly thereafter the plaintiff

ascertained that he was the owner of only 10-28 of J. M. Horner & Sons' interest in the mill and landing. The transfer of the shares of stock and conveyance of the other interests was delayed by reason of other litigation between the Horners, and in the meanwhile the plaintiff acquired an additional 8-28 interest in one-half of the mill and one-fourth of the landing. Albert Horner owned 1138 shares of the stock of the Kukaiau Plantation Company and 10-28 of the J. M. Horner & Sons' interest in the mill and landing. One-half of the mill and three-fourths of the landing were owned by the trustees of the estate of Theo. H. Davies. On April 24, 1912, Davies & Company paid the purchase price as agreed to to the plaintiff and received from him the 1262 shares of stock and a conveyance of the 1262-2400 part or share "in and to an undivided moiety or half of" the mill premises, mill and appurtenances, grinding contracts, etc., and the 1262-2400 part or share "in and to an undivided one-quarter (1-4) of the landing situate at said Kukaiau," with rights-of-way, etc. The parties supposed that the transaction was thus completed and closed. But on or about April 28, 1912, the plaintiff received certain information which upon investigation led to the ascertainment of certain facts of which he had no previous knowledge, as follows: that at various times during the year 1911 Davies & Company, acting as agent for the Kukaiau mill had made payments to Hackfeld & Company, as agent for J. M. Horner & Sons, of that firm's share of the profits made by the mill which aggregated the sum of $32,500, the last payment, being of $5000, having been made on November 30 of that year; that Hackfeld & Company had through mistake credited these sums upon its books to the account of the Kukaiau Plantation Company, of which also it was the agent; that to correct the error the amount was transferred on December 8, 1911, to the credit of the account of J. M. Horner & Sons; and out of it Hackfeld & Company had paid over the sum of $15,-410.42 to Albert Horner upon the supposition presumably that

that would be his proper share according to his interest in the firm.   The remainder of the mill profits constituted the fund paid into court by Hackfeld & Company.   It further appears that on May 4, 1912, Davies & Company bought from Albert Horner an undivided 1138-2400 part or interest "in and to an undivided moiety or one-half share" in the Kukaiau mill and appurtenances, "in and to an undivided one-fourth share or interest of" the Kukaiau landing and its appurtenances, "in and to all of the property and assets, real, personal and mixed" of J. M. Horner & Sons, and "in and to all rights, claims and demands" of J. M. Horner & Sons and Albert Horner against Kukaiau Plantation Company.   On December 20, 1912, Robert Horner sold to Albert Horner all his "remaining right, title and interest" in the Kukaiau mill and landing and their appurtenances, and "to all of the property and assets, real, personal and mixed, owned by" J. M. Horner & Sons, its or their successors or assigns, "but not conveying herein any interest in the sum of $17,089.58 divided profits from said mill, now standing on the books of H. Hackfeld & Company, Limited, to the credit of J. M. Horner & Sons, but intending to convey any interest in undivided profits in the hands of T. H. Davies & Company, Limited, which profits have not been paid to said H. Hackfeld & Company, Limited, as agents for J. M. Horner & Sons, or otherwise, or to said Albert Horner."   On December 24, 1912, Albert Horner sold to Theo. H. Davies & Company, Limited, all his "right, title and interest in and to all of that property and assets" conveyed to him by Robert Horner on December 20.   Various attempts had been made by representatives of the plaintiff and of Davies & Company to make an adjustment and settlement of the controversy respecting the money held by Hackfeld & Company but without success, and this suit was filed on July 6, 1912.

The ultimate question upon which the case hinges is one of estoppel and arises out of the following facts.   In agreeing to

purchase the interests of the plaintiff in the property at Kukaiau, Davies & Company had relied upon representations made by the plaintiff's agent, R. W. Shingle, to the effect that the plantation was practically out of debt and had a credit balance with its agent. There also had been furnished to Davies & Company by the plaintiff or his agent a statement over the signature of the treasurer of the Kukaiau Plantation Company, bearing date November 14, 1911, which showed that the company was indebted to Hackfeld & Company in the sum of $205.-88 and that there was sugar to be accounted for of the value of about $27,300. Davies & Company had asked to be furnished with a trial balance or other statement showing the condition of the plantation company's affairs. This was not supplied until March 6, 1912, when the treasurer's report, including the balance sheet for the year ending December 31, 1911, was sent by Mr. Shingle to Mr. Wodehouse, one of the directors of Davies & Company, who had taken part in negotiating with the plaintiff for the purchase of his property. The directors of Davies & Company seem not to have understood that the financial condition of Kukaiau Plantation Company was not as it had been represented to them by the plaintiff's agent until after the question came up with reference to the mill profits of J. M. Horner & Sons above referred to, although the treasurer's report showed an indebtedness to Hackfeld & Company of $32,429.78. If the report was not examined no reason for not examining it was given. It contained the very information with which the directors had asked to be furnished, and without which, one of the directors testified, "we could not do any business." The change in the account was brought about presumably through the transfer on December 8, of the sum of $32,500 to the account of J. M. Horner & Sons. The circuit judge rightly held that the sale to Davies & Company did not include any interest of the plaintiff in the funds or other property of J. M. Horner & Sons but that which was specifically mentioned, namely, the

mill and landing and their appurtenances. . But the circuit judge held that by the representation that the plantation company was out of debt which was relied on and acted upon by Davies & Company when it agreed to purchase the plaintiff's interests the plaintiff was estopped from showing the contrary; that Davies & Company was not bound by the transfer of the mill profits to the account of J. M. Horner & Sons; and that to avoid circuity of action the fund in court, except that portion which was conceded to be payable to the plaintiff, should be paid to Davies & Company. It was also held that the fact that Davies & Company received notice of the true state of affairs before it paid the purchase price to the plaintiff made no difference since it had already bound itself to purchase and could not have rescinded the transaction.

Counsel for the plaintiff contend that for several reasons which need not be enumerated here the circuit judge was in error in holding that all the elements of an estoppel were shown. Assuming that the facts proven were sufficient to give rise to an estoppel in the first instance we are of the opinion that as Davies & Company, before the transaction was closed by the transfer to it of the shares of stock and other property and the payment by it of the purchase money, namely, on March 6, had been furnished by the plaintiff's agent and had in its possession the balance sheet for December 31, 1911, which showed the actual state of the account between the plantation company and Hackfeld & Company, the result which otherwise might have ensued was obviated. The evidence showed that during the period over which these negotiations extended and prior thereto the plaintiff was not on friendly terms with his brother Albert or Hackfeld & Company, and was in fact not familiar with the financial condition of the plantation company, and did not know the state of the account between J. M. Horner & Sons and their agent until after April 24, 1912, but we assume that the circuit judge was right in holding that plaintiff's ignorance did not ex-

·cuse him. However, upon being furnished with the report of the treasurer of Kukaiau Plantation Company for the year 1911, Davies & Company was put in a position to know more ·of the financial condition of the plantation company than the plaintiff himself actually knew. That the plaintiff was charge- ·able with notice of the contents of the treasurer's report by reason of its having passed through the hands of his agent does not alter the situation. In contemplation of law both parties were apprised of the truth before the transaction was finally consummated.

Counsel for Davies & Company contend that the agreement ·of December 5, 1911, was an executed contract and, as such, it could not have been rescinded. But the contract of purchase remained executory until the purchase price was paid and the ·title to the property transferred. And we think the view ex- pressed by the circuit judge that Davies & Company was bound ·to complete the transaction at all events was a mistaken one. Davies & Company have evinced no desire to rescind.

In the absence of special circumstances equity will relieve against a contract where the parties have acted under mutual mistake as to a material fact concerning the subject matter. But in order to establish an estoppel based upon a misrepresent- ation of a material fact the party asserting the estoppel must show that he relied on the representation and he cannot very well say that he relied upon an untruth when the truth was known to him. And it is laid down in the books as a rule of general application that there can be no estoppel by misrepre- ·sentation where the party asserting the estoppel knew the facts ·or had at hand ready means of ascertaining them. 11 A. & E. Enc. Law (2d ed.) 434; 16 Cyc. 738. These principles have been recognized in a great many cases among which the follow- ing may be referred to. *City of Fort Scott* v. *Eads Brokerage Co.,* 117 Fed. 51, 56; *Aldrich* v. *Scribner,* 146 Mich. 609; *De- benture Co.* v. *Hopkins,* 63 Kan. 678; *Ditch Co.* v. *Canal Co.*

27 Col. 267, 274; *Vail* v. *Northwestern Ins. Co.,* 192 Ill. 567; *Leonard* v. *American Ins. Co.,* 97 Ind. 299, 306; *Hiskey* v. *Savings L. & B. Co.,* 27 Utah 409, 416; *Loper* v. *Robinson,* 54 Tex. 510, 516; *Hooper* v. *Whitaker,* 32 So. (Ala.) 355; *New York Life Ins. Co.* v. *Hord,* 78 S. W. (Ky.) 207; *Brant* v. *Virginia Coal Co.,* 93 U. S. 326; *Goo Kim* v. *Holt,* 10 Haw. 653, 661; *Bierce* v. *Hutchins,* 18 Haw. 511, 521.

The case at bar does not fall within that class of cases in which it is held that a party who has been guilty of an intentional fraud which has misled another and caused a change of position cannot escape the legal consequences of his fraudulent conduct by showing that the fraud might have been discovered by the other had he used due diligence.

From what has been said it follows that the plaintiff is entitled to receive the fund in court. Plaintiff's counsel now concede this to be the full amount due the plaintiff upon the accounting. The decree appealed from should be modified accordingly, and the case is remanded to the circuit judge.

*D. L. Withington* and *A. L. Castle (J. W. Cathcart* and *Castle & Withington* on the brief) for plaintiff.

*I. M. Stainback (Holmes, Stanley & Olson* on the brief) for defendant.