MINNEAPOLIS STEEL & MACHINERY CO. v. CROCKETT, Secretary of State, et al.

No. 4629. Decided January 19, 1928. (263 P. 926.)

212

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for appellants.

*Irvine, Skeen & Thurman* and *P. T. Farnsworth,* all of Salt Lake City, for respondent.

GIDEON, J.

There are eight causes of action alleged in the complaint. Plaintiff and its assignors are foreign corporations doing business within the state of Utah. The object of the action is to recover from the secretary of state certain fees paid to that officer as annual license fees for the privilege of doing business within the state. It is averred in the first cause of action that plaintiff is a Minnesota corporation; that it

has an authorized capital stock of $6,000,000; that stock has been issued, and is now outstanding, representing $4,-948,800, and that the latter named amount is its total investment. It is further averred that plaintiff is engaged in manufacturing steel and other metal products, and in selling the same in Utah and in other states of the Union; that the amount of plaintiff's capital used and located within the state of Utah does not exceed 1.7 per cent. of the total invested capital. It is also alleged that the defendant secretary of state required and demanded of the plaintiff a fee of $750 as a condition precedent to doing business within the state for the year 1926, and that the plaintiff paid such fee under protest, and now brings this action to recover the amount so paid. The fee received by the secretary of state was thereafter turned over to the defendant John Walker as state treasurer, and for such reason the treasurer is made a party defendant in the action. The allegations in the other causes of action are similar. The nature of the business engaged in by the other corporations and the amounts of capital stock authorized and actually used in this state are different, but the fee demanded in each case was based upon the authorized capital stock of each corporation. The further allegation of the complaint is that the annual license fee or tax so paid by plaintiff under protest lays an unwarranted burden upon interstate commerce, and is unlawful, for the reason that the right to impose such tax or license is denied the state by article 1, § 8, subd. 3, of the Federal Constitution; likewise that the fee required by the statute is repugnant to Amendment 14, § 1, of that document, in that the fee is a tax upon property situated wholly without the state of Utah.

The Attorney General appeared and filed a general demurrer to each cause of action stated in the complaint. The demurrer was overruled. Defendants declined to further plead. Thereafter judgment was entered in favor of plaintiff for the amounts sought. From that judgment this appeal is prosecuted.

The secretary of state justifies his action in demanding the fees of which complaint is made by reason of the provisions of Comp. Laws Utah 1917, § 1271, as amended by Laws Utah 1919, and as further amended by chapter 66, Laws Utah 1923. It is provided in that section as amended that all domestic and foreign corcorporations, except insurance companies thereafter engaged in business within this state, shall procure annually a certificate from the secretary of state authorizing such corporations to continue to transact business within the state, and that each of such corporations shall pay annually to the secretary of state a corporation license tax as follows: "All corporations with an authorized capital stock of $10,000.00 or less, $5.00." The amount of the license fee is graduated to conform with the amount of the capital stock; the maximum being a fee of $750 for all corporations having an authorized capital stock of more than $4,000,000.

In a recent case, *Badger* v. *Crockett*, 259 P. 921, this court held that Comp. Laws Utah 1917, § 2511, requiring the secretary of state to collect twenty-five cents on each $1,000 of authorized capital stock of a foreign corporation before filing its articles of incorporation, or issuing to it a certificate authorizing it to do business in this state, is contrary to the provisions of the Federal Constitution, as laying a burden upon interstate commerce; and also that the provisions of the section levied a tax on property beyond the jurisdiction of the state. The fee provided for in section 2511 is measured and controlled wholly by the amount of the authorized capital stock without regard to the amount of property involved in the business within the state or to the amount of capital invested in the corporate business within and without this state. We can see no difference in principle between the requirements of the statute above quoted, section 1271, and the provision of section 2511 involved in the Badger Case. Both the fee or tax fixed by section 2511 and the license fee fixed by section 1271 are measured solely by the authorized capital stock, and neither

is in any way related to the capital invested in business within the state or capital invested in the business of the corporation wherever located. The effect or result in either case must be the same, namely, to impose a tax upon a foreign corporation engaged in interstate commerce without regard to the amount of property invested within the state, and likewise to lay a tax upon property beyond the boundaries of the state. It appears by the allegations of the complaint that only a small percentage of the capital stock invested in the plaintiff corporation is used or invested in the state of Utah. Like facts appear in the allegations of the causes of action with reference to plaintiff's assignors. Tested by the standard of the opinions of the Supreme Court of the United States, and which opinions controlled our decision in the Badger Case, we can see no escape from the conclusion that the judgment in the Badger Case must be, and is, controlling of the question involved here.

The Attorney General relies chiefly on the opinion of the court in *Baltic Min. Co.* v. *Massachusetts,* 231 U. S. 68, 34 S. Ct. 15, 58 L. Ed. 127. The opinion in that case gives support to defendant's contention, but later decisions emanating from the same court state that the rule or principle announced in *Baltic Min. Co.* v. *Massachusetts* must be considered as no longer the rule of law adhered to by that court. It is definitely stated in *Alpha Cement Co.* v. *Massachusetts,* 268 U. S. 203, 45 S. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219, that the language in *Baltic Min. Co.* v. *Massachusetts,* so far as it tends to conflict with the views of the court expressed in *Alpha Cement Co.* v. *Massachusetts,* and other cases, must be, and is, definitely disapproved. The language of the court in *Alpha Cement Co.* v. *Massachusetts,* to which reference is made, is quoted in *Badger* v. *Crockett,* supra. The Attorney General, in an effort to differentiate sections 2511 and 1271, argues that the fee fixed by section 1271 is a license or excise fee, and is a tax or fee permissible for the state to collect so long as the amount of the fee is not unreasonable; and he further argues that the maximum

annual fee of $750 for the privilege of continuing business in the state cannot be held to be unreasonable or arbitrary. The contention is not sound. It is not the amount of the tax that is objectionable. It is rather the fact that the state by the statute in question imposes a tax or burden upon a foreign corporation which it permits to do business within the state without regard to the property of the corporation within the state or to the amount of money actually invested in the corporation both within and without the state. In that regard it is a tax imposed upon interstate commerce and upon property beyond the jurisdiction of the state, neither of which is within the power of the state to do. The court, in *Alpha Cement Co.* v. *Massachusetts*, supra, says:

"The amount demanded is unimportant when there is no legitimate basis for the tax."

The Supreme Court of California in *Perkins Mfg. Co.* v. *Jordan* (Cal.) 254 P. 551, recently decided, touching a question almost identical with the question here under review, says:

"There is no substance in the argument of respondent that a different principle may apply in the case of filing fees graded on authorized capital than in the case of a privilege or excise tax based upon authorized capital. The effect upon interstate commerce and upon equal protection of the law to persons in the several states is the test, and neither the name nor the aim of the state tax can suffice to prevent consideration by the Supreme Court of the United States of the necessary effect and consequences of the state statute."

The foregoing statement of the California court has, in our judgment, abundant support in the decision of the Supreme Court of the United States. *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, 38 S. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617; *Air Way, etc., Corp.* v. *Day*, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169; *Alpha Cement Co.* v. *Massachusetts*, supra; *Frick* v. *Commonwealth of Pennsylvania*, 268 U. S. 473, 45 S. Ct. 603, 69 L.

Ed. 1058, 42 A. L. R. 316, and cases cited and discussed in these various opinions. We are necessarily controlled, and should be, by the principles and rules enunciated by the Supreme Court of the United States upon questions of which that court is the final arbiter. Being so controlled, we are of the opinion, and so hold, that the statute (Comp. Laws Utah 1917, § 1271) is violative of the Federal Constitution.

Judgment affirmed.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.