# FIRST SECURITY CORPORATION OF OGDEN v. STATE TAX COMMISSION.

No. 5814.   Decided December 29, 1936.   (63 P. [2d] 1062.)

Rehearing Denied February 15, 1937.

102

*Thatcher & Young,* of Ogden, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendant.

MOFFAT, Justice.

This cause comes to this court on a writ of certiorari directing the State Tax Commission to certify its record to this court. The matter was submitted to the Tax Commission and comes here on the same agreed statement of facts. The commission levied a franchise or privilege or income tax upon the plaintiff corporation for the privilege of doing business in the state of Utah during the years 1931 to 1934, inclusive. Plaintiff is a Delaware corporation, qualified to do business in Utah.

Plaintiff corporation, deeming itself exempt under the statute from filing a corporation franchise tax return and also from paying the tax provided to be levied under the provisions of chapter 39, Laws of Utah 1931, and chapter 13, Title 80, R. S. Utah 1933, the latter reference including the reenactment of chapter 39, Laws of Utah 1931, failed to file corporation income tax return with the Tax Commission. The commission levied the tax and demanded payment. Plaintiff duly filed a petition for re-determination of the tax imposed. When the matter came before the commission for hearing upon the petition, the facts were stipulated, the matter was submitted, the commission found against the claimed exemption and levied the tax. Plaintiff claims error and the matter is brought here for review. The facts so stipulated and submitted are as follows:

"It is hereby mutually agreed between petitioner, First Security Corporation of Ogden, a corporation, and the State Tax Commission, that for the purpose of trying the case upon the petition for redetermination of deficiency, heretofore filed herein by petitioner, the following shall be considered as the facts and all of the facts, subject to any legal objections, which shall be considered by the State Tax Commission, and upon which it shall render its decision and judgment.

"(a) The said corporation was organized in 1928 under the laws of the State of Delaware primarily for the purpose of acquiring by stock ownership the control of banking and other corporations, and holding the stocks therein for the purpose of controlling the management of affairs of such other corporations.

"(b) Immediately thereafter it qualified to do business in the State of Utah, and thence hitherto has been so qualified. During all of the years 1931, 1932, 1933, 1934 and 1935, the sole business of said corporation, except as hereinafter stated in paragraphs (d) and (e) consisted of holding stock of such corporations for the purposes stated. During that period it owned stock in, and exercised such control of, the following named corporations, all of which made returns under the Utah Franchise Tax Law: [Here follows a list of fourteen banking corporations.]

"From time to time after its organization, the taxpayer acquired the control of various banks in the state of Idaho until in September, 1933, it controlled the following named banks: [Here follows a list of sixteen Idaho banking corporations.]

"In October, 1933, First Security Bank of Boise and First Security Bank of Pocatello were merged into Anderson Bros. Bank, and the latter changed its name to First Security Bank of Idaho, and its principal place of business to Boise. Immediately thereafter it purchased all of the assets and good will of all of the other Idaho banks hereinbefore named. The taxpayer has continued to control the said bank which now is engaged in a branch banking business in the state of Idaho.

"Prior to the merger above mentioned, Franklin Investment Company was a subsidiary of First Security Bank of Preston, Capital Investment Company was a subsidiary of First Security Bank of Boise, and Security Investment Company was a subsidiary of First Security Bank of Pocatello. Each was used as a liquidating company for its parent. In the month of October, 1933, the taxpayer acquired all of the capital stock of Franklin Investment Company, and thereafter the Franklin Investment Company acquired all of the assets and business of the Capital Investment Company and the Security Investment Company.

"During a part of the period in question the taxpayer owned the control of First Security Bank of Rock Springs and First Security Bank of South Superior, both of which were organized under the laws of Wyoming. In the year 1934 the First Security Bank of Rock Springs purchased the assets and assumed the liabilities of First Security Bank of South Superior.

"At no time has any of the above mentioned corporations organized under the laws of Idaho or under the laws of Wyoming transacted any business within the State of Utah, or made any report under the Utah Franchise Tax law, except Western Investment Company, hereinbefore referred to.

"(c) A copy of the articles of incorporation and of the by-laws of the taxpayer, as originally adopted, is attached to the petition filed herein, and is made a part hereof. The articles have been amended, but the amendment dealt only with the capital structure, and did not affect the powers and purposes of the corporation. The amendment to the by-laws dealt only with the time of holding the annual meetings of the stockholders.

"(d) While its powers are very broad, it confined its business, during the period in question (unless the facts hereinafter stated require a different conclusion), exclusively to holding stocks of other corporations and controlling the management of affairs of such corporations. It did not carry on or undertake any business, undertaking, transaction or operation commonly carried on or undertaken by capitalists, promoters, financiers, contractors, merchants, commercial men or agents, nor did it carry on or undertake any investment or insurance business, or any other business of any kind, unless the transactions hereinafter set out are such. In the year 1933, in order to comply with the 'Banking Act of 1933,' it purchased securities of the character required by that act, for the aggregate amount of $4,465.00, and it still holds such securities, and must purchase and hold others. In March, 1935, it purchased from First Security Company, one of its wholly owned subsidiaries, three hundred nine (309) shares of preferred stock of The Amalgamated Sugar Company paying the market price therefor. In December of the same year it sold all of the shares through a local broker at market price. In the same month the First Security Company bought on the market substantially the same number of shares at the market price. On several occasions it has sold stock in its subsidiaries in order to qualify the vendees as directors, and it carries them on open account for the purchase price.

"It has also been named in a master group insurance policy as the parent corporation of its various subsidiaries, a procedure which was necessary to enable the employees of such subsidiaries to obtain group insurance. The taxpayer has paid none of the premiums and the First Security Company, one of its subsidiaries, has acted as the collector and disburser of the premiums.

"In November, 1935, the taxpayer cancelled the appointment of two corporations doing business in San Francisco, California, as its Transfer Agent and Registrar of stock transfers, and at the same time it appointed the First Security Trust Company, a corporation of Salt Lake City, as the Transfer Agent, and The First National Bank of Salt Lake City as its Registrar. In December, 1935, it declared a dividend which was disbursed entirely by the First Security Trust Company.

"Annually it causes its accounts to be audited by certified public accountants and its president makes an annual report to its stockholders. It keeps its financial books and records at Ogden, Utah.

"(e) The stock certificates owned by it and issued by such other corporations, with the exception of occasional temporary presence here, were kept without the State of Utah during all of said time, and are now so kept. With the exception of a small cash working fund formerly kept on deposit in Utah, all available moneys are and were held by it in banks without this State. All other stocks owned by it during such period were issued by corporations organized under the laws of foreign states, none of which corporations did any business in Utah, and none of which made returns under the act. None of the certificates of stock issued by said corporations and owned by the taxpayer were kept in Utah during the period in question.

"(f) Except as above stated, it owned, during the period in question, no real or personal property within the State of Utah, and maintains no clerks, or other paid employees, therein. Its sole activities in Utah consisted in holding stockholders' meetings, at which reports were presented, and directors elected, and directors' meetings at which matters connected with the control of the management of affairs of its subsidiaries were considered.

"(g) During the same period of time there was at least one corporation doing business in the State of Utah of the same kind as that done by the petitioner, but which corporation owned no stock issued by any foreign corporation. Such corporation has been accorded by the State Tax Commission, exemption under the provisions of section 80-13-5 Revised Statutes of Utah, 1933, from the payment of any franchise and privilege tax imposed by the Laws of Utah.

"It is agreed by the parties hereto, that if it shall be finally determined that the taxpayer is liable to pay the franchise and privilege tax due the State of Utah for the period in question, or for any part thereof, The State Tax Commission shall have the right to examine the books and records of the taxpayer for the period which shall be involved, as fully and freely as if this stipulation had not been made."

We have quoted the stipulation of facts at some length. The questions of law involved, however, as stated by the Tax Commission, are:

"Is there a discrimination between foreign and domestic corporations?"

and

"Has the legislature made an unreasonable classification in exempting corporations whose sole business consisted of holding stock of other corporations for the purpose of controlling the management of the affairs of such other corporations, where those corporations so managed filed returns and paid a tax in the State of Utah and those corporations which hold stock for the purpose of management and control in corporations which do not pay a tax in the State of Utah?"

The Tax Commission held there was no discrimination and that the classification made by the Legislature was reasonable and that it was within the power of the Legislature to make such classification. Actually, in so far as this case is concerned, we do not see wherein the matter of classification was determinative of the issues. In brief and argument, plaintiff submits one question:

"May the legislature of the State of Utah impose on the First Security Corporation of Ogden a franchise tax from which it would be wholly exempt were it not for the fact that it, a foreign corporation, is the owner of stock of other corporations, also foreign, which do not make returns under the franchise tax laws of this State and which [foreign corporations] transact no business and have no property in the State of Utah, the business of the First Security Corporation of Ogden being strictly confined to the holding of stock in other corporations for the purpose of controlling the management of the affairs of such corporations, and which corporations, except those first mentioned, make returns under the Utah Law?"

The question as thus stated is somewhat involved. As we understand the issue, the Tax Commission contends that, if all the corporations in which the First Security Corporation of Ogden holds management or control-stock make returns under the provisions of section 80-13-3, R. S. 1933, as amended by chapter 89 of Laws of Utah 1935, the First Security Corporation of Ogden would be exempt under subsection (16) of section 80-13-5, R. S. 1933. It is conceded that all the Utah corporations in which the First Security Corporation holds stock as indicated made income tax returns to the Tax Commission. The reason the Tax Commission claims the exemption does not apply to the First Security Corporation of Ogden is that the First Se-

curity Corporation holds stock in and manages from Utah at least two corporations foreign to the state of Utah doing business in the state of Wyoming. Because of the failure of the two corporations doing business in Wyoming to make returns, the Tax Commsision exacted a franchise or privilege tax on all the income paid by all the controlled corporations doing business in Utah to the plaintiff First Security Corporation of Ogden. The two sections about which the controversy revolves are section 80-13-3, as amended and section 80-13-5 (16), which read as follows:

Section 80-13-3:

"Every bank or corporation, other than a national bank and corporation exempted in section 80-13-5, for the privilege of exercising its corporate franchise or for the privilege of doing business in the state, shall annually pay to the state a tax equal to three per cent of its net income for the preceding taxable year computed and allocated to this state in the manner hereinafter provided, or one-twentieth of one per cent of the fair value during the next preceding taxable year of its tangible property in this state, whichever is greater; but in no case shall the tax be less than $10; provided, that the taxpayer may elect to pay the tax in four equal installments, in which case the first installment shall be paid on the date prescribed in this act for the payment of the tax by the taxpayer, the second installment shall be paid on the 15th day of the third month, the third installment on the 15th day of the sixth month, and the fourth installment on the 15th day of the ninth month, after such date. If any installment is not paid on or before the date fixed for its payment, the whole amount of the tax unpaid shall be paid upon notice and demand from the tax commission."

Section 80-13-5 (16):

"The following corporations are exempt from the provisions of this chapter, to-wit: * * *

"(16) Corporations whose sole business consists of holding the stock of other corporations for the purpose of controlling the management of affairs of such other corporations, if such other corporations make returns under this chapter."

It is conceded that, if it were not for the last clause, "if such other corporations make returns under this chap-

ter," the First Security Corporation of Ogden would be within the exception and no tax could be imposed. Neither of the parties has submitted any authority relating to the construction to be given to the quoted clause, other than apparently assuming that it should be applied literally. The construction given to subsection (16), above quoted, by the Tax Commission is that the effect of the "if" clause, in view of the stipulation, is that the First Security Corporation of Ogden does not come within the exemption, for the reason that the two corporations doing business in Wyoming are corporations which do not and could not be required to make returns to the state of Utah, and therefore the First Security Corporation of Ogden must pay the franchise tax on all the income from the domestic corporations controlled by it.

The above proposition is essentially the issue argued by plaintiff's counsel. Counsel for the Tax Commission, however, argues that counsel for plaintiff misses the point, and then proceeds to say that:

"It must be conceded that the State of Utah may tax any corporation for the privilege of doing business within the State of Utah regardless of ownership of property."

That question, however, we need not discuss in the present case. The question as stated is largely, if not entirely, limited by a further statement of counsel for the Tax Commission when he says:

"It is not the property which is being taxed, but the privilege of doing business.  * * * It must be conceded that if the legislature had thought it wise they could have taxed any holding company doing business in the State of Utah the same as other corporations."

The section of the statute levying the tax makes no distinction between domestic and foreign corporations, so that the Legislature, we do not say taxed, but we do say could have required, and does require, holding corporations doing business in Utah to meet the same requirements as other foreign corporations for the

privilege of doing business in the state, unless they fall within the exception. We have a state constitutional provision which provides:

"No corporations organized outside of this State, shall be allowed to transact business within the State, on conditions more favorable than those prescribed by law to similar corporations, organized under the laws of this State." Const. art. 12 § 6.

A corporation organized outside of this state, failing to comply with the laws of this state, has no power to engage in business in this state and is not entitled to the benefit of the laws of this state with reference to corporations (*Rio Grande Western Ry. Co.* v. *Telluride Power Transmission Co.*, 23 Utah 22, 63 P. 995) ; but, by complying with the state law, foreign corporations are accorded the same but no other or greater rights than domestic corporations (*Hiskey* v. *Pacific States Sav., Loan & Bldg. Co.*, 27 Utah 409, 76 P. 20). Counsel for the commission again says:

"The plaintiff has premised its argument upon the ground that we are taxing the corporation because of the ownership of the property. We believe that this is erroneous. The State of Utah is attempting to collect the tax from the plaintiff corporation because it is doing business within the State of Utah. The income derived by the corporation from the business done within the State must, of necessity, be the basis of tax. There is no attempt to tax the corporation on any property which it holds outside of the State."

Plaintiff claims that the Tax Commission may not levy this tax upon the First Security Corporation without violating that part of the equal protection clause of the Fourteenth Amendment to the United States Constitution providing that:

"No State shall * * * deny to any person within its jurisdiction the equal protection of the laws," nor without imposing a burden upon interstate commerce under the Federal Constitution which gives to Congress the power "to regulate Commerce with foreign Nations, and among the several States." Article 1, § 8.

The Tax Commission takes the position that the commission has the right under the law and the law imposes

the tax on the plaintiff corporation because it is not within the exemption provision of section 80-13-5, supra. In so far as section 80-13-3, R. S. 1933, as amended, is concerned, no distinction is made between domestic corporations and foreign corporations, so that, unless excepted by section 80-13-5 (16), all corporations except national banks for the privilege of exercising their corporate franchises or for the privilege of doing business in the state are required annually to pay the tax so provided.

Foreign corporations, before doing any business within the state, must file a copy of their articles of incorporation with the designated officer and a copy of their by-laws, amendments, etc., all properly certified, and an acceptance of the Constitution of the State of Utah, and other matters required by section 18-8-1, R. S. 1933, and pay the fees required by section 28-1-2, R. S. 1933. When these things have been done and the provisions of section 28-1-2 complied with, the secretary of state issues a certificate authorizing the corporation to exercise its corporate franchise and is privileged to do business in the state, and it would then appear to be the intention of the statute that this privilege continues until the end of its fiscal year or the end of the first calendar year (section 80-13-16, R. S. 1933), and within two months and fifteen days after the close of its taxable year it is required to pay a tax for the period covered by the return (section 80-13-22, R. S. 1933). The provisions of the chapter relating to "Franchise and Privilege Taxes" of corporations (section 80-13-1 to 80-13-65, R. S. 1933) show that the tax imposed, and the procedure for determining the amount of such tax wherever profits are earned, is essentially an income tax imposed upon corporations. There are instances in which the distinction between income tax and the franchise or privilege tax would make no difference, but in the instant case whether the tax is income, franchise, or privilege need not be determined unless it is determined that plaintiff does not come within the exemption of section 80-13-5 (16),

R. S. 1933, relating to corporations whose sole business consists of holding the stock of other corporations for the purpose of controlling the management of such other corporations.

We assume from the terms of the stipulation that plaintiff, in so far as this case is concerned, is a corporation whose sole business is that of controlling and managing the affairs of other corporations. As we understand the position of the Tax Commission, plaintiff ■ was excluded from the exception because of the last clause of the section exempting such corporation "if such other corporations make returns under this chapter." It is apparent the purpose of the statute is to require the corporations doing business in the state to pay the tax imposed upon the income of the respective corporations. It has been held that the net income of a corporation may be used as the measure for determining the amount of the franchise or privilege tax. The cases, however, are difficult of classification when it comes to the matters of either classification or determination of a satisfactory measuring unit for the imposition of corporation licenses or franchise taxes. To analyze, classify, and distinguish them would only lengthen the discussion, without aiding much in the problem here under consideration.

Where one corporation owns all of the stock or a control of the stock sufficient to control the management of such other corporation and has no other income, the holding corporation would, under our statute, unless exempted, be required to pay twice upon the same in- ■ come. In other words, the stockholders' returns would be diminished by a 3 per cent. tax because of the return of the managed company and an additional 3 per cent. for the privilege of having the holding corporation pass on to the stockholders thereof their proportion of the earnings of the controlled companies. We are of the opinion that the intent and meaning of the "if" clause of subsection (16), supra, was to exempt holding corporations

if the corporations, the stock of which is held, make returns under the chapter. The statute requires only Utah corporations or corporations qualified to do business in Utah to make returns. The state of Utah has no power nor authority to require a Wyoming corporation which has not accepted the constitutional provisions of Utah nor qualified to do business in the state, to make returns under the income tax law. In making corporation income tax returns, whether the corporation is a business corporation or a holding corporation, the statute seems to exempt certain income from taxation. For example, "rents, interest and dividends derived from business done outside this state less related expenses shall not be allocated to this state." Section 80-13-21, R. S. 1933. This excludes for taxation purposes, rents, interest, and dividends derived from business done outside of this state. We think the requirement imposed by the Tax Commission in this case is discriminatory. The construction, demanding the payment of taxes upon the total income received by the First Security Corporation of Ogden from the companies managed and controlled by it as a holding corporation solely because the Wyoming companies do not make returns under the Utah statute, while admitting that, if the holding company held and controlled only Utah companies, all of which companies make returns, imposes not only an unfair burden but discriminates against the holding company and imposes a penalty for holding and receiving income, if it did so receive income, from the foreign corporations so held. And to which corporation the statute could not by any construction or power of Legislature in Utah be made applicable. This would be true whether the tax here sought to be imposed were construed to be a franchise or privilege tax, an income tax, or a tax upon property. The levying section bases the tax either on a percentage of net income or upon the "fair value during the next preceding taxable year of its tangible property in this state, whichever is greater" (Rev. St. 1933, 80-13-3, as amended), and, in the event of

no taxable income or no tangible property, fixes the tax at a minimum of $10.

Many cases bearing more or less upon the principles involved might be cited, quoted from, and analyzed. The cases do not have identical facts, and to attempt to collect or apply or distinguish them would, without profit, unduly add to the length of this opinion. One case analogous to the instant case is that of *F. S. Royster Guano Co.* v. *Commonwealth of Virginia*, 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989. The Royster Guano Company was engaged in manufacturing and selling commercial fertilizers. It operated a plant in Virginia and several other states. It made net profits from plants in other states approximating the amount of profits made in the state of Virginia. Under the provisions of the Virginia law the state officials assessed the income tax upon the aggregate amount of the income. In the course of the opinion the court says:

"It [is] unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the states from resorting to classification for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy. [Citing cases.]"

After discussing the Virginia law, the court further said:

"But no ground is suggested, nor can we conceive of any, sustaining this exemption which does not apply with equal or greater force as a ground for exempting from taxation the income of Virginia corporations derived from sources without the state where they also transact income-producing business within the state. Corporations of this class derive no more protection from the state of their origin with respect to their outside business, and are no less subject to taxation by the states in which such business is conducted, than corporations of

the other class; and they are required to comply with the same laws as to the payment of organization taxes and annual registration fees and franchise taxes to the state of origin. Their business done within the state presumably is of some general benefit to the state, certainly enriches its treasury by the amount of the taxes they pay upon the income derived therefrom; and the imposition upon them under chapter 472 of taxes not only upon this income, but also upon income that they derive from business conducted outside of the state (similar income of the favored corporations being exempted) has the effect of discriminating against them for that which ought to operate if at all in their favor. It is obvious that the ground of difference upon which the discrimination is rested has no fair or substantial relation to the proper object sought to be accomplished by the legislation. It follows that it is arbitrary in effect; and none the less because it is probable that the unequal operation of the taxing system was due to inadvertence rather than design."

Pertinent principles of law were considered by this court in the cases of *Badger* v. *Crockett*, 70 Utah 265, 259 P. 921, and *Minneapolis Steel & Machinery Co.* v. *Crockett*, 71 Utah 211, 263 P. 926. In those cases it was held that an act requiring the secretary of state to collect 25 cents on each $1,000 of authorized capital stock of a foreign corporation before filing its articles of incorporation or issuing certificates of authority to do business in this state offends against section 1 of the Fourteenth Amendment to the Constitution of the United States, in that such act attempts to tax property beyond the jurisdiction of the state. While the tax here brought in question is designated as being "for the privilege of exercising its corporate franchise or for the privilege of doing business in the state," yet the express reason assigned for not exempting the First Security Corporation is that the tax on the net income of the Idaho and Wyoming corporations has not been paid, which in its essence is an income tax on property beyond the jurisdiction of the state. A tax based on the net income of the business done and property owned without this state by a foreign corporation is as direct a burden on property beyond the jurisdiction of the state as is a fee of 25 cents on each $1,000 of authorized

capital stock of a foreign corporation. This court having held that the latter means of raising revenue offends against section 1 of the Fourteenth Amendment of the Federal Constitution, the tax must fail. The Legislature did not intend to exempt a holding company whose subsidiaries may be required to and do pay a tax and at the same time deny holding corporations with foreign subsidiaries the same exemption. A classification of holding companies leading to such a result denies the plaintiff corporation equal protection of the law, and offends against section 1 of amendment 14 of the Constitution of the United States. The position of the Tax Commission is that a holding company is exempt from the tax when, and only when, all of the subsidiary corporations make returns. R. S. Utah 1933, 80-13-5, makes provision for the exemption from the corporation franchise tax fifteen kinds of corporations in addition to holding corporations. The lawmaking power did not intend to tax a holding corporation on all of the income of its subsidiary corporations where one or more of such subsidiaries is not liable for the payment of tax, and where all of such subsidiaries liable for the payment of the tax have paid the same. All of these objections may be obviated.

As heretofore indicated, we are of the opinion that the Tax Commission in exacting the tax misinterpreted or misapplied the statute. The evident meaning and purpose of the statute is to exempt holding corporations "if such other corporations make returns under this ■ chapter" as required. Section 80-13-5 (16), supra, exempts the plaintiff corporation from the tax imposed. If the plaintiff corporation were not exempted under the exempting clause referred to, still the statute, as applied and interpreted by the commission, would be discriminatory and would deprive plaintiff of property without due process of law. One holding corporation holding only control-stock of Utah corporations making returns would be exempt under the construction made by the Tax Commission,

while a similar corporation holding both domestic and foreign stock would not be exempt.

The levy of the Tax Commission herein and the order relating thereto are vacated and set aside.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.